## Jones, Appellant, *v.* Manhattan Life Insurance Company of New York.

438

Argued October 28, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Thomas O. Haydock,* with him *Albert G. F. Curran,* for appellant.

*J. S. Conwell,* with him *J. S. Conwell, Jr., Philip J. Ross* and *Pepper, Bodine, Stokes & Schoch,* for appellee.

OPINION BY RHODES, J., January 31, 1939:

This is an action in assumpsit to recover benefits for total disability, which plaintiff alleges are payable to him under the disability provision of a policy of life insurance issued by defendant. The case was tried without a jury by a judge of the court below, who found in favor of defendant. Plaintiff's motions for a new trial and for judgment n.o.v. were dismissed by the court in banc, and from the judgment thereupon entered plaintiff has appealed. Error is assigned to the refusal of aforesaid motions.

In considering the validity of plaintiff's motion for judgment in his favor n.o.v., our review is circumscribed by the rule that "the findings of a trial judge, sitting without a jury, have the force and effect of the verdict of a jury, and, when sustained by the court in banc, will not be set aside by an appellate court, if there is competent evidence to support them": *Horsfield v. Metropolitan Life Ins. Co.,* 124 Pa. Superior Ct. 458, at page 462, 189 A. 892, at page 893.

The policy in question was issued December 6, 1924, the amount of life insurance granted thereby being $5,000. The total annual premium was $152.90, which included $9.40 for double indemnity benefit, and $15.90 for the disability benefits that are the subject of this controversy. The provisions of the policy relative to disability benefits are printed in the margin.[1]

---

[1] "And the Company agrees to pay to the Insured one and one-half per cent of the face of this policy ($15 per $1,000) each month during the lifetime of the insured and also to waive the payment of premiums, if the Insured becomes totally and permanently disabled before age 60, subject to all the terms and conditions contained in the 'Disability Benefits' clause on the second page hereof. ......

"Disability shall be deemed to be total and permanent when-

It is not disputed that on October 15, 1932, plaintiff suffered a fracture of the lower third of the left leg with some dislocation of the ankle joint and the lower fragment; also a fracture of the head of the tibia on the right side. His claim for disability benefits was duly perfected, and beginning February 1, 1933, defendant made the required monthly payments to and including March 1, 1937, and also waived the premiums which fell due during the years 1933 to 1936, inclusive. On March 5, 1937, defendant notified plaintiff that disability benefits would be discontinued as of March 1, 1937, and that premiums falling due thereafter would have to be paid within the days of grace in order to maintain the policy in force, and thereafter this action was brought.

Plaintiff contends that he is equipped to make a living only as a carpenter; that the evidence shows that he can perform only isolated duties of that occupation, principally while seated; that he cannot obtain a medical certificate which would enable him to secure in-

---

ever the Insured becomes totally disabled by bodily injury or disease so that he is then and presumably will be thereby permanently incapacitated from engaging in any occupation whatsoever for remuneration or profit. Without prejudice to any other provision, such total disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months and during all that period incapacitated from engaging in any occupation for remuneration or profit. The permanent loss of the sight of both eyes, or the severance of both hands or both feet, or of one entire hand and one entire foot, shall constitute permanent total disability within the meaning of this clause. . . . . . .

"Recovery from Disability.— The Company may from time to time demand due proof of the continuance of such total disability, but not oftener than once a year after such disability has continued for two full years, and upon failure to furnish such proof, or if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, income payments shall cease and the payment of any premium thereafter falling due under this Policy shall not be waived."

dustrial employment; that the only occupations mentioned at which he might work were purely speculative and based upon abnormal conditions; and that he is totally and permanently disabled within the meaning of the policy.

At this point it is necessary to emphasize a factor to which the argument of plaintiff does not give sufficient recognition, namely, that the finding of the learned trial judge, sitting as trier of the facts, having been in favor of defendant on a disputed question of fact involving the veracity of witnesses, we must assume the truth of defendant's evidence and every inference fairly deducible therefrom (*Vogt v. Brady*, 108 Pa. Superior Ct. 144, 146, 164 A. 96) ; and all the evidence and proper inferences therefrom favorable to the defendant must be taken as true and all unfavorable to it rejected. See *Levick Building & Loan Ass'n v. Collins et al.*, 112 Pa. Superior Ct. 434, 171 A. 300.

Plaintiff was forty-eight years of age, and a native of Persia, where he attended the Presbyterian school. At seventeen he was an apprentice to a carpenter in Russia, and continued so until he came to the United States four years later. Since coming here he has worked as a carpenter, inside and outside, and also as a cabinet maker, joiner, and layer of hardwood floors. He can read and write, and has a knowledge of elementary arithmetic. He admitted that his condition was all right, except for his legs, and the acuteness of his mental condition, as well as his comprehension of the English language, is evident from his apparent ability to cope with direct examination and extended cross-examination.

Plaintiff received no medical treatment after May, 1935, until he was sent to Dr. Thomas J. Ryan by his attorney in March, 1937. Dr. Ryan treated plaintiff at the time of his admission to the hospital after his accident in 1932. He last treated him on January 10,

1933. Dr. Ryan, as a witness for the plaintiff, testified that plaintiff could work at cabinet making. This was an occupation in which plaintiff had engaged prior to his accident and resulting disability. Dr. Ryan further testified: "Q. In your opinion is he in such a physical condition today, is he so disabled that he would be unable to perform any of the duties of any occupations which he ordinarily might be capable of performing? A. No. I have answered that." Dr. Ryan was of the opinion that the alignment of the fractures was perfectly satisfactory from a medical standpoint, and that he never felt that plaintiff was totally and permanently disabled. The witness thought, however, that the work which plaintiff could do would be limited to such as required the use of his hands, in a seated position, provided he was not obliged to sit more than two or three hours at a time.

Dr. John P. Chapman, a witness for defendant, testified that in his opinion plaintiff was neither permanently nor totally disabled, and that he could still do cabinet work. In his opinion plaintiff could stand for a great length of time, but would be capable only of partly performing the duties of a carpenter, in that he could not readily climb out on a scaffold with any degree of safety, or readily climb up and down ladders.

Another medical witness for defendant, Dr. R. L. John, testified that he examined plaintiff on June 15, 1937, in Dr. Ryan's office, and found that the lower end of the left leg "was much thickened above the ankle, but not swollen, nor was there any edema. He stated that when he walked or was on the foot for very long that it did swell, and that he wore an elastic stocking from his toe to his mid-calf. But he had come down from his home to Dr. Ryan's office, and it was not swollen when I saw it. It was very much thickened due to the excessive callus on the back here. His foot was in excellent alignment with the leg. There was no limi-

tation apparently of the ankle joint, to the motion of the ankle joint. The right leg showed some thickening about the upper end of the tibia and fibula, that is about the knee joint. The motion was from 180 to about 80. That means from full extension to slightly less than a right-angle, when the motion was suddenly arrested by what I could feel was a bony block, tight capsule or ligaments. I guess that is all. Q. How about the lateral mobility of the leg? A. There was no abnormal lateral mobility in the knee, which occurs if the ligaments have been torn and not healed properly. In other words, it was normal. There should be no lateral mobility and there was none. Q. How about the muscle tone? A. The muscle tone was good and there was apparently no atrophy. The color was also good, a little dusty at the lower end of the leg." He was also asked: "Q. In your opinion, having in mind what I have recited, is Mr. Jones able to perform any of the duties of any occupation that he ordinarily had been capable of performing? Mr. Haydock: Not any of the duties, the majority of the duties? Mr. Conwell: No, I want you to answer the question. (Objection overruled.) (Exception for plaintiff.) The witness: Any of the duties? Well, I should say he is ...... Q. In your opinion, doctor, is Mr. Jones able to engage in a gainful occupation? A. Yes." And on cross-examination he was asked: "Q. Doctor, what gainful occupation is he able to engage in? A. I should say even a jobbing carpenter. Certainly a man who has come to do jobs on my house does not mount scaffolds or mount high ladders to do odd jobs around the house, putting in window panes, window cord, small things. They are mostly standing. Incidentally, a man of his age who is a carpenter, I never saw a man as old as he is climbing up scaffolds or climbing ladders. Q. I am not asking you that, doctor. I am asking you what gainful occupation he is able to engage in. A. I said as a jobbing

carpenter. Q. What else? A. If he is trained as a cabinet maker, he might do that, if he did not have to be on his feet too long a time."

Another physician, who was called by plaintiff, expressed the opinion that plaintiff was totally and permanently disabled.

In addition to the medical testimony, defendant produced two investigators who had plaintiff under surveillance on March 26 and 27, 1937, July 6 and 7, 1937, and January 4, 5, 6, and 7, 1938. They testified in detail concerning the activities of plaintiff, and exhibited motion pictures of him to the trial judge and the court in banc. To summarize briefly their testimony, it may be said that generally plaintiff left his home about 10:40 a. m., proceeding on foot, always carrying a cane, and walking in a normal manner, sometimes leisurely, sometimes more rapidly. He never stopped to sit on a step to rest, or to lean against buildings. He stood and conversed with friends and relatives, and his morning trip usually consumed an hour and a half to two hours, at which time he returned home. In the afternoon he customarily proceeded on foot to a motion picture theatre, or to the building of the Assyrian Aid Society, of which he was a member. His cane was used principally as a walking stick, and for support only occasionally. He was observed to walk fifteen or sixteen city blocks in the course of a day, although not all at one time. He was seen to stand on his feet for an hour to two hours at a time. Any indications of difficulty in locomotion, and the use of his cane, seemed to be confined to the particular city block where he lived. In the congested business section of Philadelphia he was able to get around without difficulty. On one occasion, January 7, 1938, he remained at the Assyrian Aid Society from 7:30 p. m. until 12:40 a. m. In the interim the temperature had fallen, and plaintiff proceeded to his home on foot at a very rapid rate

which "was almost a run. There was no limp apparent, nor did he seem to have any difficulty in negotiating the distance from the club to his home, and he entered the house, going up those steps as rapidly as could any normal person." The motion pictures were not seen by this court, but concerning them the trial judge said: "The motion pictures which were taken by the investigators were shown to the Court on two occasions and disclosed that the plaintiff walks with a slight limp but without any difficulty and does not use the cane to assist him, except on very rare occasions. The plaintiff walks without any apparent difficulty, sometimes negotiates steps in a normal manner, and on other occasions by placing one foot on the step and then bringing the other foot up tó it."

In *Cooper v. Metropolitan Life Insurance Co.*, 317 Pa. 405, at page 408, 177 A. 43, at page 44, where the disability clause in the policy was similar to the one at bar, the Supreme Court said, speaking through Mr. Justice KEPHART: "A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." See, also, *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125; *Butler v. Metropolitan Life Ins. Co.*, 122 Pa. Superior Ct. 159, 186 A. 395.

The trial judge found as a fact that plaintiff has not been disabled within the meaning of the policy in question since March 1, 1937, applying the rule above quoted. As there was competent evidence to support that finding, the third and fourth assignments of error are overruled accordingly. The credibility of the witnesses and the effect of the evidence were for the trial judge, sitting without a jury. He saw and heard plaintiff testify, and had an opportunity to observe him dur-

ing the trial. The same is true of all the witnesses who testified. Moreover, he had before him the testimony as to plaintiff's education, prior employments, the gainful occupations in which he had previously engaged and those the duties of which he was capable of performing, and in which any existing disability did not prevent him from engaging. The able argument of counsel for plaintiff might be persuasive if we were to determine the facts, but the evidence being sufficient, we are obliged to affirm the judgment entered on the findings.

The first and second assignments of error relate to the refusal of a new trial. The first complains that the verdict was against the weight of the evidence. In his opinion, written for the court in banc, LAMBERTON, J., said: "In short, the issue was one of fact and the trial Judge has found in favor of the Defendant. A review of the record not only convinces us that he was justified in so doing, but that on the same record we would have come to the same conclusion. The Motions for Judgment N.O.V. and for a New Trial were therefore refused." The granting of a new trial on the ground stated is peculiarly for the court below, and, where it has refused to grant one for that reason, this court will not do so unless there has been an abuse of discretion. *Heaver v. Philadelphia Rapid Transit Co.*, 120 Pa. Superior Ct. 520, 183 A. 110. We find none in this case.

The second assignment of error complains of the form of a question addressed to Dr. Ryan. The subject of this assignment was not among the reasons for a new trial, filed in the court below, and could well be ignored for that reason. See *Zimmerman v. Houghwot,* 125 Pa. Superior Ct. 319, 322, 189 A. 519. In addition, the question does not appear in the part of the record to which the assignment refers. Elsewhere we find the question, but the objection interposed was not the same as now assigned and argued. Plaintiff is confined on

appeal to the ground of objection taken in the court below. *Roebling's Sons Co. v. American Amusement & Construction Co.*, 231 Pa. 261, 271, 80 A. 647. In any event, it is clear that the learned trial judge considered the testimony upon the basis for which plaintiff contends, and if there was error it was a harmless one for which we do not reverse.

Judgment is affirmed.