## Clemens v. Granda

C.P. of Delaware County, no. 93-19235.

*Martin Horowitz,* for plaintiff.
*Vincent Patrick Reilly,* for defendant.

McGOVERN, *J.*, February 13, 1998—Plaintiff, Jane R. Clemens, appeals from this court's denial of her post verdict motions.

Plaintiff's motor vehicle was lightly struck in the rear on June 2, 1992, while plaintiff was stopped at a red light. The threshold issue presented was whether or not plaintiff could recover noneconomic damages by virtue of her selection of the limited tort option pursuant to Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. This court, on August 16, 1996, following a nonjury trial, entered a verdict in favor of the defendant, finding that plaintiff "did not suffer a 'serious impairment of body function.'" Plaintiff has appealed following the denial of plaintiff's post verdict motions.

## STANDARD FOR RECOVERY PURSUANT TO THE LIMITED TORT OPTION

Although plaintiff contends that this court failed to apply the correct standard in determining plaintiff's eligibility to recover noneconomic damages, nowhere does plaintiff indicate what that incorrect standard was. The standard applied was, in fact, statutorily prescribed.

It is now well-known that Pennsylvania's limited tort option allows an insurer to offer automobile insurance coverage at a reduced premium to insureds who are willing to give up the right to sue for non-economic damages, such as pain and suffering. An insured who has elected the limited tort coverage may sue for non-economic damages only if that insured suffers "serious injury" in the collision. 75 Pa.C.S. §1705(d). "Serious

injury" is defined as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702. The issue is not new to Pennsylvania's appellate courts. See *Murray v. McCann*, 442 Pa. Super. 30, 658 A.2d 404 (1995), which adopted the Michigan Supreme Court's analysis in *DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896 (1986), holding that a court, in making a threshold determination as to whether an individual has suffered serious impairment of a body function, should consider "the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment," and "any other relevant factor." *Murray v. McCann, supra* at 36, 658 A.2d at 407, citing *DiFranco v. Pickard, supra*, 398 N.W. at 914-15. That court found that the purpose of MVFRL 1407 was to eliminate lawsuits based upon minor injuries which did not seriously affect the ability of the body, in whole or in part, to function. That standard of consideration has apparently continued. *Dodson v. Elvey*, 445 Pa. Super. 479, 665 A.2d 1223 (1995); *Kelly v. Ziolko*, 1997 Pa. Super. LEXIS 3847 (1997).[1] This court, in evaluating the issue at the bench trial in this matter, indeed considered the totality of the circumstances in this case, as well as the applicable law, before making its decision giving rise to the verdict.

---

1. The test for determining "serious injury" has been considered recently in *Leonelli v. McMullen*, 700 A.2d 525 (Pa. Super. 1997), and *Kelly v. Ziolko, supra*. It must be noted that both cases involved the application of this standard in a motion for summary judgment. The Court in *Leonelli v. McMullen, supra*, was concerned that a plaintiff's ability to work had been overemphasized in considering the issue. The court in both cases concludes that a judgment must be made based upon "a totality of facts in the case." *Kelly v. Ziolko*, 1997 Pa. Super. LEXIS 3847 at 20.

It may be noted that in *Dodson v. Elvey, supra,* the appellate court found no "serious injury," although the plaintiff there had missed four months of work while recovering from lumbar and cervical strain, contusions and a fractured elbow with continued pain and weakness in the arm. Plaintiff, in the case at bar, missed only 13 hours of work altogether, and those were for visits for treatment, not for recuperation. The plaintiff in *Murray v. McCann, supra,* missed two and a half weeks of work, complained of chronic ongoing neck and back stiffness, and was unable to enjoy miniature golf and roller skating, but was able to engage in all her former activities. The plaintiff in the case at bar contended that this incident had a "tremendous" effect on her life and she can no longer enjoy tennis. Plaintiff in the case at bar suffered no broken bones, received standard physical therapies and treatments, ultimately abandoning them, and now treats herself with Advil and ice packs. The Superior Court found that plaintiffs in both *Murray v. McCann, supra,* and *Dodson v. Elvey, supra,* did not suffer serious injury, since although they had suffered soft tissue injury with pain, they had failed to demonstrate a serious impairment of body function that interfered substantially with their activities for an extended period of time. The evidence presented at trial in the case at bar convinced the fact-finder that no different conclusion was warranted here.

Plaintiff, in fact, has waived this issue because she presented nothing more than a boilerplate contention suggesting that the court used an incorrect standard in determining this issue without any appropriately developed argument in support thereof. Pa.R.C.P. 227.1; *Frank v. Peckich,* 257 Pa. Super. 561, 391 A.2d 624 (1978); *Nimick v. Shuty,* 440 Pa. Super. 87, 655 A.2d 132 (1995); *Smith v. Penbridge Associates Inc.,* 440 Pa. Super. 410, 655 A.2d 1015 (1995); *Gallagher v. Sheridan,* 445 Pa. Super. 266, 665 A.2d 485 (1995).

Plaintiff suggests that this court did not allow her soft tissue injury to be considered, citing *Chanthavong v. Tran*, 452 Pa. Super. 378, 682 A.2d 334 (1996). It is clear that in Pennsylvania one may not instruct the fact-finder that the law does not recognize soft tissue injury to be a serious injury. Such would be fundamental error. *Murray v. McCann, supra*; *DiFranco v. Pickard, supra*; and *Dodson v. Elvey, supra*. Plaintiff, other than her unfounded statement in this regard, presents no evidence that the court applied such an erroneous standard, and in fact, plaintiff could not do so because the court did not follow that erroneous principle, but rather considered this case based on all of the evidence, applying the *"DiFranco"* standard and making its determination in light of the facts and circumstances.

## SERIOUS IMPAIRMENT OF BODY FUNCTION

Plaintiff argues that the evidence supports her contention of "serious impairment of body function."

Plaintiff, at the time of this incident, was a full-time food services worker for the Haverford School District, and, in addition, she worked two nights a week at CVS Pharmacy in Havertown, Pennsylvania. (2/13/96 N.T. 9-10.) Plaintiff complained of pain in her head, neck and shoulders following impact of defendant's vehicle. (N.T. 12.) Plaintiff did not go to the hospital following the incident, but rather went to CVS Pharmacy to say she could not work that evening because of the collision. The next morning, plaintiff went to a chiropractor and was sent by him for x-rays. (N.T. 13.) Plaintiff treated with a chiropractor twice a week for six or seven weeks, and terminated treatment contending she was getting no relief. (N.T. 14.) Plaintiff admitted that her headaches had subsided, even though the pain in her neck had not changed. (N.T. 14.) Plaintiff complains now of continuing neck pain and limited ability to turn her head to the right. (N.T. 15-17.)

Plaintiff then began treating with an orthopedic surgeon who prescribed physical therapy which plaintiff undertook three times a week, and "then down to two for a year and a half." Feeling no better, plaintiff stopped this treatment, as well. (N.T. 17.) Plaintiff complains now that her head is always crooked above her neck, although such was not observed by the fact-finder during trial. (N.T. 17-18.) Plaintiff was then referred by her trial counsel to a neurologist whom she visited "in '94," who prescribed Modine for her, but no physical therapy. (N.T. 18-19.) Plaintiff then testified that she treated with an additional physician who examined her and gave her the impression that hers was a "pretty much permanent condition and there was nothing they could do for it." (N.T. 19.)

Plaintiff testified that she did not return to her night employment at CVS Pharmacy because she was unable to unload trucks and stock shelves, and, therefore, the management terminated her employment. (N.T. 19-20.) Plaintiff has sought no additional part-time work since this incident. (N.T. 53-54.) Plaintiff is now an assistant food service manager at the same school where she was employed at the time of this incident. Her employment requires her to set up desserts, cut vegetables, set up the assembly line and to cashier. (N.T. 22-23.) Plaintiff complained of constant pain at work but is able to perform all of her household duties, although perhaps not as thoroughly as before the incident. (N.T. 25-28, 30.) Plaintiff presently uses only Advil for pain, and after work and on weekends, uses ice packs. (N.T. 21-22, 25.) The only social activity plaintiff is unable to do is play tennis. (N.T. 26, 38.) Plaintiff missed no time from her full-time employment except for several hours in order to receive medical treatment. (N.T. 31-33, 37.) Plaintiff continues to be able to drive. (N.T. 38.)

Both parties stipulated to present the medical evidence by submitting expert reports and related documents.[2] Plaintiff's expert, Dr. Greene, opined that this incident caused a destabilization of a pre-existing asymptomatic degeneration of the C6-C7 cervical vertebrae. The doctor opined that as a result of microinstability secondary to cervical strain, degenerative changes at the C6-C7 level, and scar tissue formation in the cervical muscles and ligaments, plaintiff suffers a 20 percent whole body impairment from the problems in her neck and will experience permanent cervical pain. Plaintiff complains that her pain never diminished.

It is plaintiff, not her physicians, who indicated she had job-related difficulties and it is plaintiff who contends that she lost her part-time employment because she told management she could no longer do the work. (N.T. 19-20, 26.) There is no expert testimony in this trial indicating any limitation upon the plaintiff's ability to work.

If an injury is to constitute a serious impairment of a body function, it must interfere *substantially* with a plaintiff's normal activities and have a *serious* impact for an *extended* period of time on the plaintiff's life. The Pennsylvania Superior Court in *Dodson v. Elvey*, *supra*, concluded that a subjective complaint of continued arm weakness and pain, coupled with continued full-time employment without medical restrictions, the taking of over-the-counter pain medication, along with the inability to bowl, lift weights and play softball does

---

2. Reports from plaintiff's expert, an orthopedic surgeon, Dr. Ronald B. Greene (exhibits P-1 and P-2), an MRI report (P-3), and defendant's expert, Dr. David K. Saland, also an orthopedic surgeon (D-1 and D-2); John Kaufman, a chiropractor (D-3); office notes from Dr. William Emper, an orthopedic surgeon (D-4); x-ray of plaintiff's spine (D-5); plaintiff's deposition (D-6); Dr. Norman Leopold, a neurologist (D-7 and D-8), were all admitted by agreement. (See N.T. 44-47.)

not amount to serious impairment of body function. There is no substantial difference from that case to the case sub judice. The impairment "must be objectively manifested . . . [and] . . . the inquiry does not focus on the injury itself but whether the injury caused serious impairment of body function." *Id.* at 498, 665 A.2d at 1233. The issue in the *Dodson v. Elvey* case was whether there was sufficient uncontested evidence to even create a triable issue. "An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life." *Id.* at 499, 665 A.2d at 1234. Plaintiff has continued with her full-time employment without any medically imposed restriction. Plaintiff has not gained a second employment because she has not attempted to do so. (N.T. 53-54.) Although plaintiff testifies that she is given assistance at her employment, such might easily be expected that a supervisor would receive similar attention. No witnesses were presented from plaintiff's employment. Plaintiff takes only Advil for pain. Plaintiff's social life and activities other than tennis, have continued without interruption. Plaintiff performs all function of her life as she did before this incident, albeit with some pain. The evidence does not evince a serious or substantial interference with plaintiff's daily life or normal activities. *Dodson v. Elvey, supra* at 501, 665 A.2d at 1235.

The matter of *Murray v. McCann, supra,* is virtually on point with the case sub judice. There, the court similarly found there was no serious impairment of body function. This plaintiff was not transported to the hospital, as was the plaintiff in *Murray v. McCann.* The plaintiff in *Murray v. McCann, supra,* was bedridden for two weeks, missing approximately two and a half weeks work, whereas the plaintiff here was not bedridden and missed some hours from work to attend doctors' or therapists' appointments. The plaintiff in

*Murray v. McCann, supra,* could no longer engage in miniature golf and roller skating, whereas the plaintiff in the case at bar could no longer engage in tennis, but both engaged in all other activities which they enjoyed prior to the incident. The plaintiff in *Murray v. McCann, supra,* did not require breaks from employment because of the pain, whereas the plaintiff in the case sub judice receives help from coworkers with lifting. The medical findings of plaintiff's physicians in both cases are strikingly similar.

The defense expert, Dr. David K. Saland, an orthopedic surgeon, testified in the case at bar, by way of stipulation:

"There is absolutely no doubt that prior to the accident June 2, 1992, and neither caused by nor related to it the patient, had evidence of extensive degenerative changes in her cervical spine including hypertrophic spur formation and degenerative disc disease and associated changes. These were neither caused by nor affected by the motor vehicle accident which occurred on June 2, 1992."

"Today's orthopedic examination fails to reveal any objective residual of the injuries which occurred in the motor vehicle accident. It is my opinion that Ms. Clemens has fully and satisfactorily recovered from her injuries with no evidence of permanent impairment, residual deficit or ongoing disability. She requires no further medical evaluation or treatment related to the accident."[3] (Exhibit D-1.)

Plaintiff's chiropractor, by stipulation, indicated that some seven weeks after this incident, plaintiff was "responding" to treatment. (Exhibit D-3.) Plaintiff does

---

3. Dr. Saland further testified by way of stipulation that plaintiff's description of pain being suffered in the neck and upper back as early as 1981 is consistent with his opinion already above set forth. (Exhibit D-2.)

not dispute that. (N.T. 35-36.) A June 1992 x-ray of plaintiff's back indicated only scoliosis and degenerative changes. (Exhibit D-5.) The neurologist that plaintiff visited at the behest of her own lawyer found her to be essentially normal, with a full range of motion in the cervical spine, noting only "increased discomfort ... with hypertension of the neck to either side." (Exhibit D-7.) The same neurologist noted that hypertension of the neck to either side produced no limitations, although there was some posterior cervical neck discomfort on the right, but there was no demonstration of any motor weakness, atrophy, twitching or drift. (Exhibit D-8.)

Indeed, plaintiff's own expert, Dr. Greene, found on November 28, 1994, that plaintiff "can do all of her activities but she does them a bit slower and she has pain doing them." (Exhibit P-2.) Dr. Greene also stated on February 8, 1996 that plaintiff had full extension of the cervical spine and neck, albeit with pain at the extremes of movement. (Exhibit P-2.)

It is eminently clear that plaintiff is capable of, and is, in fact, living her life, enjoying all of the body functions necessary therefor, as she did prior to this incident, except experiencing some pain in so doing. The cases hereinabove cited clearly establish the law in this Commonwealth and provide that pain alone is not serious injury where a plaintiff has the ability to lead her life as she did before the incident. *Murray v. McCann, supra.*

## CONCLUSION

The findings of fact by a nonjury trial judge have the force and effect of a jury verdict. *Custis & Co. v. Tradesmans National Bank & Trust Co.,* 155 Pa. Super. 282, 38 A.2d 409 (1944). The credibility of witnesses and the weight to be accorded credible testimony

are for the trial judge as the finder of fact. *Aaron v. Strausser*, 360 Pa. 82, 59 A.2d 910 (1948). A new trial is warranted where there is an abuse of discretion in finding that the weight of the evidence supports the trial judge's findings. *Jones v. Manhattan Life Insurance Co.*, 134 Pa. Super. 437, 4 A.2d 220 (1939); *Stahli v. Wittman*, 412 Pa. Super. 281, 603 A.2d 583 (1992). Should a trial court misapply the law or reach a manifestly unreasonable decision, or one that is biased or prejudiced, then, of course, a new trial is appropriate. *Chanthavong v. Tran, supra.* The trial court's determination of credibility and weight of the evidence is to be given the same consideration on appeal as a jury's determination, and although appeal issues may focus freely upon the conclusions of law or the findings of fact, such must be based on the evidence which, together with all reasonable inferences therefrom, must be drawn in a light most favorable to the victorious party. *Sorg v. Cunningham*, 455 Pa. Super. 171, 687 A.2d 846 (1997); *DeMarchis v. D'Amico*, 432 Pa. Super. 152, 637 A.2d 1029 (1994); *Short v. Metropolitan Life Insurance Co.*, 339 Pa. Super. 124, 488 A.2d 341 (1985). Grant of a new trial is conditioned upon an error of law or a clear abuse of discretion. *Hostetter v. Hoover*, 378 Pa. Super. 1, 547 A.2d 1247 (1988).

Judgment n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that a verdict was improper. *Pirozzi v. Penske Olds-Cadillac-GMC*, 413 Pa. Super. 308, 605 A.2d 373 (1992). Here, the court must determine whether or not there was sufficient competent evidence to sustain the verdict, granting the winner of the verdict the benefit of every reasonable inference drawn from the evidence and rejecting all unfavorable testimony and inferences that may be drawn therefrom. *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 523 Pa. 1,

564 A.2d 1244 (1989); *Spagnol Enterprises Inc. v Digital Equipment Corp.*, 390 Pa. Super. 372, 568 A.2d 948 (1989). Such a motion is granted when no two reasonable minds could differ that, as a matter of law, the party with the burden to do so has failed to make out its case. *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa. Super. 333, 455 A.2d 637 (1982). The focus of examination rests upon the issue as to whether the trial court committed an error of law or an abuse of discretion which affects the outcome of that verdict. *Maloney v. City of Philadelphia*, 111 Pa. Commw. 634, 535 A.2d 209 (1987); *Beechwoods Flying Service v. Al Hamilton Contracting Corp.*, 317 Pa. Super. 513, 464 A.2d 440 (1983), *aff'd*, 504 Pa. 618, 476 A.2d 350 (1984).

Plaintiff in the case at bar suffered an identifiable injury, but that injury caused no serious impairment of body function and it has resolved. Considering all of the evidence, and considering the extent of the impairment, the body function impaired, length of time that it lasted, and the lack of treatment, together with all of the other relevant factors in this matter, and even though plaintiff continues to experience pain, nonetheless, this court has found, and the credible evidence supports a finding, that plaintiff has not suffered a serious injury as defined by the statute. She, therefore, has not crossed the threshold in order to be awarded noneconomic damages. Plaintiff's injury or pain has simply not interfered substantially with her normal activities, as the law requires.

It is for the foregoing reasons that this court entered a verdict in favor of the defendant, and it is respectfully suggested that such is supported by the evidence in this case and the applicable law. The record reflects neither an error of law nor an abuse of discretion impacting upon the court's decision.