STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-09-35

JCN - CVIR  /a/ 3r ~

HIGHLANDS FUEL DELIVERY, LLC, )
IRVING OIL LIMITED, and IRVING )
OIL TERMINALS, INC. )
)
Plaintiffs, )
)
v. )
)
ACE INA INSURANCE, )
)
Defendant )
)

DECISION AND ORDER

Defendant ACE INA Insurance (ACE) and Plaintiffs Highlands Fuel Delivery, LLC (Highlands), Irving Oil Limited (IOL), and Irving Oil Terminals Inc. (Terminals) (collectively, "Irving") have filed cross motions for summary judgment on whether the pollution exclusion in the policy issued by ACE to Irving applies such that ACE has no duty to defend Irving in litigation relating to the alleged damage and contamination caused by methyl tertiary butyl ether (MTBE), a gasoline additive (the "MTBE Complaints").

## BACKGROUND

Except where noted, the following facts in the summary judgment record are not in dispute. *See F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 2, 8 A.3d 646, 647.

*The Parties*

IOL is a corporation organized under the laws of Canada with its principal place of business in Saint John, New Brunswick. (Pls.' Supp. S.M.F. ¶ 9; Def.'s Opp. S.M.F. ¶ 9.) IOL is in the business of refining, distributing, and marketing petroleum products. (Pls.' Supp.

S.M.F. ¶ 1; Def.'s Opp. S.M.F. ¶ 1.) All of the gasoline that IOL imports into the United States is refined in Saint John, New Brunswick. (Pls.' Supp. S.M.F. ¶ 9; Def.'s Opp. S.M.F. ¶ 9.) Gasoline refined by IOL in Canada is imported by Terminals and distributed by Highlands, a Maine corporation, through company-operated and independent dealer service stations in the United States. (Pls.' Supp. S.M.F. ¶ 10; Def.'s Opp. S.M.F. ¶ 10.) Until 2004, Terminals and Highlands were headquartered in Bangor. (Pls.' Supp. S.M.F. ¶ 11; Def.'s Opp. S.M.F. ¶ 11.) ACE is a Canadian insurance company headquartered in Toronto, Canada. (Pls.' Supp. S.M.F. ¶ 12; Def.'s Opp. S.M.F. ¶ 12.)[1] ACE, or its predecessor CIGNA Insurance Company of Canada (CIGNA), issued umbrella liability insurance to Irving from 1985 to 2006 (the "ACE policy").[2] (Def.'s Supp. S.M.F. ¶ 2; Pls.' Opp. S.M.F. ¶ 2; Pls.' Supp. S.M.F. ¶ 12; Def.'s Opp. S.M.F. ¶ 12.)

## The ACE Policy

In the ACE policy, ACE agreed to "pay on behalf of the Insured the ultimate net loss which the insured shall be obligated to pay by reason of the liability imposed upon the Insured by law . . . for damages on account of . . . property damage . . . caused by or arising out of each occurrence happening anywhere in the world, during the policy period." (Pls.' Supp. S.M.F. ¶ 14.)[3] "Property damage," "occurrence," and "ultimate net loss" are defined terms in the policy.

---

[1] ACE denied only the portion of paragraph 12 of Irving's statement of material facts that indicated the ACE insurance provided coverage "above an underlying primary policy" because ACE asserts there were multiple primary policies in effect. (Def.'s Opp. S.M.F. ¶ 12.) To the extent it is supported by record evidence, the rest of the statement of material fact is deemed admitted because it is not properly controverted. *See* M.R. Civ. P. 56(h)(4).

[2] The parties disagree over whether the policy is excess coverage (ACE's position) or an umbrella policy (Irving's position). (*See* Def.'s Supp. S.M.F. ¶ 2; Pls.' Opp. S.M.F. ¶ 2.) The Court finds that any distinction between "umbrella" and "excess" to be immaterial to the present motion, but uses the term umbrella because ACE did not properly controvert Irving's characterization of the policy as an umbrella policy in several statements of material fact. (*See* Def.'s Opp. S.M.F. ¶¶ 12, 14.)

[3] ACE qualifies this paragraph to note that that there is a limit on its liability under the policy, but does not otherwise object to or deny the statement of material fact. (Def.'s Opp. S.M.F. ¶ 14; *see* McCormick Aff. Ex. 1 at 1-2.) Here, and other places, ACE objects to Irving's citation to and inclusion of Attachment

2

(Pls.' Supp. S.M.F. ¶¶ 15-17; Def.'s Opp. S.M.F. ¶¶ 15-17.)[4] In the ACE policy issued for the period between March 31, 1991, to March 31, 1992, there is an endorsement containing a "Pollution Exclusion," which states, in pertinent part:

> This policy is amended in that it shall not apply to any claim or claims for Bodily Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.
>
> The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acidic, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
>
> This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:
>
> 1.  violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator,
>
> 2.  unintended fire, lightning, windstorm damages or explosion;
>
> 3.  collision, overturning or upset of any railroad vehicle.
>
> Notwithstanding the foregoing this Policy is further amended in that it shall not apply to any claim or claims relating to:
>
> a)  any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the insured's Products that have been discarded, dumped, abandoned or thrown away by others;
>
> b)  any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants relating to any activities of the Insured or others on behalf of the Insured on, over or under any water course or body of water;

---

A, which purports to set forth the relevant provisions of the ACE policy, in the summary judgment record because it is not evidence of a quality that could be admissible at trial as required by M.R. Civ. P. 56(e). (*See* Def.'s Opp. S.M.F. ¶¶ 14-17, 19, 23, 25.) The Court agrees that Irving's summary of the policy is not properly before the Court and does not consider it. *See Doyle*, 2003 ME 61, ¶ 12, 824 A.2d at 53.
[4] ACE qualified each statement to include the full definition within the policy. (Def.'s Opp. S.M.F. ¶¶ 15-17.)

3

c)	any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants relating to any marine terminal, bulk plant, tank farm, refinery, underground storage tank system, oil and gas exploration, drilling, development or production operations.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

Except as otherwise provided by this Endorsement all terms, provisions and conditions of his Policy shall have full force an effect.

(Def.'s Supp. S.M.F. ¶ 5; Pls.' Opp. S.M.F. ¶ 5.)[5] The policies in effect from March 31, 1998, to March 31, 2000, contain identical language, expect that subsection 3 was modified to read "collision, overturning or upset of any vehicle or railroad vehicle." (Def.'s Supp. S.M.F. ¶ 6; Pls.' Opp. S.M.F. ¶ 6.) Irving exhausted their primary insurance coverage for the following periods: March 31, 1991, to March 31, 1992; March 31, 1998, to March 31, 1999; and March 31, 1999, to March 31, 2000. (Def.'s Supp. S.M.F. ¶ 3; Pls.' Opp. S.M.F. ¶ 3.)[6]

*The MTBE Complaints*

Before discussing the parties' submissions regarding the MTBE Complaints, the Court notes that the parties formally agree on very little with respect to the MTBE Complaints. Both Irving and ACE have submitted with their summary judgment pleadings summaries of the 58 underlying MTBE Complaints (*see* Attachment B to Pls.' Supp. S.M.F.; Def.'s Supp. S.M.F. ¶ 6), but both parties have objected to the other's summary of those complaints, asserting that the complaints speak for themselves. (*See* Pls.' Opp. S.M.F. ¶¶ 1, 6; Def.'s Opp. S.M.F. ¶¶ 2-7.) Upon the Court's request, Irving submitted a supplemental statement of material facts that was to

---

[5] Irving qualified this statement of material fact to indicate that the quoted language is not the entire endorsement. (Pls.' Opp. S.M.F. ¶ 5.)
[6] The Court notes that despite the factual phrasing within the body of the decision regarding the time periods in question, the parties have only agreed that Irving *alleged* exhaustion of primary policies during those periods, not that the primary policies were in fact exhausted.

4

contain the relevant allegations of each of the underlying complaints. (*See generally* Pls.' Supp.

S.M.F.) That document will be discussed further in the order.

The basic facts that the parties do not dispute are that: 1) Irving is being sued in 58 separate actions regarding MTBE, and 2) ACE disputes whether it has a duty to defend Irving in these matters based on the pollution exclusion. Irving alleges in its First Amended Complaint that the underlying MTBE Complaints allege that

> as a result of acts or omissions of the Irving Plaintiffs and others in the refining, marketing distribution and retail sale of gasoline, MTBE from gasoline products has caused contamination of well fields, drinking water supplies, damage to filters, pumping stations an other equipment, and other forms of property damage.

(Def.'s Supp. S.M.F. ¶ 6; Pls.' Opp. S.M.F. ¶ 6; *see* Compl. ¶ 14.)[7] With regards to the substance known as MTBE, the parties agree that the MTBE Complaints allege that: 1) MTBE is an animal carcinogen, linked to human health issues, and considered a possible human carcinogen;[8] 2) MTBE is not found in gasoline unless it is added to gasoline; 3) due to the chemical properties of MTBE, leaks of even minute amounts of gasoline are a threat if it contains MTBE; 4) the enhanced solubility of MTBE means that it not only dissolves more easily in water, it persists in water for longer than other components of gasoline. (Def.'s Supp. S.M.F. ¶¶ 7-10; Pls.' Opp. S.M.F. ¶¶ 7-10.)

## DISCUSSION

"Whether an insurer has a duty to defend in a particular case is a question of law." *State Farm Mut. Auto. Ins. Co. v. Montagna*, 2005 ME 68, ¶ 8, 874 A.2d 406, 408 (citing *York Ins.*

---

[7] As a general rule, citations to a party's complaint are not "record references which refer to evidence of a quality that could be admissible at trial," as required by M.R. Civ. P. 56(e). *See Doyle*, 2003 ME 61, ¶ 12, 824 A.2d at 53. Nevertheless, because the parties only agree to the allegations of Irving's Complaint, and not to the underlying allegations in the MTBE Complaints, the Court is utilizing this statement to further the discussion and not as binding on either party.

[8] Irving admits that some of the MTBE Complaints contain this allegation, but deny that the allegation is true. (Pls.' Opp. S.M.F. ¶ 10.)

*Grp. of Me. v. Lambert*, 1999 ME 173, ¶ 4, 740 A.2d 984, 985). The Court determines "the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy. A duty to defend exists if a complaint reveals a potential . . . that the facts ultimately proved may come within the coverage." *York Ins. Grp.*, 1999 ME 173, ¶ 4, 740 A.2d at 985 (quotation marks omitted); *accord Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 9, -- A.3d ---, ---. "[T]he pleading test for determination of the duty to defend is based exclusively on the facts *as alleged* rather than on the facts as they actually are." *Travelers' Indem. Co. v. Dingwell*, 414 A.2d 220, 224 (Me. 1980) (quotation marks omitted).

In order for a party to obtain summary judgment, there must be no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. A factual issue is genuine when there is sufficient supporting evidence "that would require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quotation marks omitted). "A party who moves for a summary judgment must properly put the motion and, most importantly, the material facts before the court, or the motion will not be granted, regardless of the adequacy, or inadequacy, of the nonmoving party's response." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 5, 770 A.2d 653, 655; *accord Cach, LLC v. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015, 1019.

For the Court to determine whether ACE has a duty to defend Irving, the Court must compare "the *allegations in the underlying complaint* with the provisions of the insurance policy." *York Ins. Grp.*, 1999 ME 173, ¶ 4, 740 A.2d at 985 (emphasis added) (quotation marks omitted). The parties' initial statements of material facts in the matter were inadequate because

6

they only summarized the allegations within the MTBE Complaints, but did not include any of the actual allegations. *See Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 25, 2 A.3d 289, 300 ("facts not set forth in the parties' statements of material facts are not part of the summary judgment record"); *N. Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 10, 984 A.2d 1278, 1280-81 (requiring a moving party to include all necessary materials and facts that show the party is entitled to judgment as a matter of law within the summary judgment record). Because the allegations within the MTBE Complaints were not properly laid out in either party's statements of material facts, the court requested that Irving submit a supplemental statement of material facts that would set forth each allegation in each complaint that Irving believed would show that ACE had a duty to defend Irving in each of the underlying cases.

In response to the Court's request, Irving filed a Supplemental Statement of Material Facts, in which Irving referenced many of the allegations in the 58 underlying MTBE Complaints. Neither Irving, nor ACE, however, has separated the allegations by complaint. Perhaps this is the result of the parties' belief, expressed at oral argument, that the Court need not analyze each individual complaint to determine if ACE had a duty to defend. The Court disagrees. The Court must analyze the policy language in the context of the allegations of each complaint even if the allegations in many of the complaints are similar. This is also consistent with M.R. Civ. P. 56(h)(1), which provides that "[a] motion for summary judgment shall be supported by a separate, short, and concise statement of material facts . . . ." In other words, Rule 56 requires that the facts upon which the Court is to rely when assessing the appropriateness of summary judgment must be delineated in the statement of material facts. In this case, the allegations in each complaint, together with the policy language, constitute the facts upon which the Court would base its summary judgment determination. *See Mitchell*, 2011 ME

7

133, ¶ 9, -- A.3d at --- ("Only the complaint and the policy are considered in determining whether the insurer has a duty to defend."). Because the parties arguably have failed to put the allegations before the Court in a manner that the Court can consider within the strictures of M.R. Civ. P. 56, the Court can deny summary judgment to both parties on that basis.

The Court recognizes that to deny summary judgment on that basis, without further comment, will likely invite the filing of another series of motions in an effort to address the deficiency in the record identified by the Court. The Court, therefore, notes that based on the record before the Court, certain allegations in at least many of the MTBE Complaints might implicate a duty to defend. For instance, in most of the MTBE Complaints, the plaintiffs allege that leaks occurred in the distribution system, which can include transportation by a variety of means. The Court cannot, at this stage and on this record, conclude that the MTBE Complaints lack an allegation within the "collision, overturning or upset of any railroad vehicle" exception to the pollution exclusion. *See, e.g., Mitchell*, 2011 ME 133, ¶¶ 18-19, -- A.3d at --- (analyzing and extrapolating theories of recovery that could be proved that would bring the underlying litigation within policy coverage). [9] Perhaps factual evidence will be developed upon which the Court could determine definitively whether this exception to the pollution exclusion applies, but that evidence is not currently before the Court.

Based on the foregoing analysis, therefore, the Court orders:

1.    Defendant ACE INA Insurance's motion for summary judgment is DENIED.

2.    Plaintiffs Highlands Fuel Delivery, LLC, Irving Oil Limited, and Irving Oil Terminals Inc.'s motion for summary judgment is DENIED. [10]

---

[9] The Court's reference to this exception to the pollution exclusion is intended to be illustrative and not an analysis of all possible bases upon which ACE might be required to defend the MTBE Complaints.

[10] Also pending before the Court is ACE's motion to strike the supplemental affidavits of E. Stuart Rodgers and Stephen McCormick submitted by Irving with their reply memorandum in support of their motion for summary judgment. Because the Court is denying summary judgment as to both parties, the motion is moot and the Court does not address it further. *See Price v. State*, 2010 ME 66, ¶ 6, 1 A.3d

8

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 12/30/11

Justice John C. Nivison
Maine Business & Consumer Court

Entered on the Docket. 1·4·12
Copies sent via Mail __ Electronically ✓

---

426, 428) ("a court should not decide an issue that has lost [its] controversial vitality" (quotation marks omitted)).

9

CV-09-35
Highlands Fuel Delivery LLC et al
v.
ACE INA Insurance

For Plaintiff(s)
David McConnell
John Ciraldo
Perkins Thompson
One Canal Plaza Ste 900
Portland ME  04112

For Defendant:
Harold Frieman
Laurence Leavitt
Brett Leland
Friedman Gaythwaite Wolf & Leavitt
25 Pearl St
Portland ME  04112