STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-042

G. ROBERT SMITH and
CATHERINE A. SMITH,

        Plaintiffs,

    v.

STEWART TITLE GUARANTY
COMPANY,

        Defendant

**ORDER**

Plaintiffs G. Robert and Catherine A. Smith claim that their title insurer, defendant Stewart Title Guaranty Company, breached its duty to defend them in a 2008 easement dispute. Both parties have motioned for summary judgment. The 2008 complaint could not on its face have given rise to any claim within the title insurance policy's coverage, so Stewart Title Guaranty Company had no duty to defend the Smiths in that dispute. Stewart Title Guaranty Company's motion for summary judgment is granted, and the Smiths' motion for summary judgment is denied.

## BACKGROUND

There are no disputes of material fact. In 2004 the plaintiffs, G. Robert and Catherine A. Smith, purchased property in Owls Head, Maine. Their deed referenced a fifteen-foot wide right-of-way benefiting Barry M. and Adele G. Faber. The Fabers had reserved the right-of-way when they sold the property to

1

the Smiths' predecessors in interest. Adele G. Faber still owns the lot benefited by the right-of-way.

The Smiths obtained a title insurance policy through defendant Stewart Title Guaranty Company (Stewart Title) when they purchased their property. The deeded description of the Smiths' property, including the metes and bounds of the right-of-way, were incorporated into the policy. The right-of-way's description in the policy, the Smiths' deed, and the original reservation are identical.

Faber filed a complaint dated January 22, 2008 against the Smiths, alleging that in 2007 they had placed granite curbs within the deeded right-of-way. Faber complained that the curbs interfered with her ability to remove snow from the right-of-way and prevented emergency vehicle access to her home. She requested (1) an injunction requiring the Smiths to remove all obstructions from the right-of-way; (2) a declaration adopting a survey she had commissioned and a declaration that the Smiths' had no right to place obstructions within the marked right-of-way; (3) an order authorizing the recordation of the survey; and (4) an order allowing her surveyor to install pins in the ground to depict the right-of-way's boundaries. Faber's complaint incorporated the Smiths' deed, the deed containing the original reservation of the right-of-way, and a copy of the survey.

The Smiths tendered the defense of Faber's complaint to Stewart Title, but Stewart Title denied coverage in a letter dated April 3, 2008. The Smiths filed this action against Stewart Title on January 12, 2009, alleging that Stewart Title breached its duty to defend the Smiths against Faber's lawsuit. These cross-motions for summary judgment followed.

2

Stewart Title argues that no facts or claims Faber could have proven from her complaint would have been covered under the policy. Faber's complaint only concerned the precise boundaries of the described right-of-way on the earth, and whether the Smiths had placed new objects within those boundaries. Stewart Title claims that this dispute is precisely the sort excepted from coverage because it does not involve title to the land and could not have been discovered by a record search, but does involve the physical position of boundaries on the land and could easily have been avoided or resolved through an accurate survey. Stewart Title also points out that the Smiths installed the disputed granite curbs long after the policy was issued, and that the policy does not cover losses related to the removal of structures erected after the policy date.

The Smiths counter-argue that Faber's complaint was in fact a dispute over the boundaries of their property, and so implicated set-back violations that would have existed at the policy date. In the same vein, they argue that Faber's complaint does not necessarily implicate the policy's Survey Exception. The Smiths further posit that the Survey Exception is vague because it could reasonably be read to apply only to risks present before the policy date, and so should not apply to except Faber's claims from coverage.

## DISCUSSION

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. Maine applies the comparison test to determine whether an insurer has a duty to defend its insured in a lawsuit. "If, comparing an insurance policy with

3

an underlying complaint there is any legal or factual basis that could obligate an insurer to indemnify, then the insured is entitled to a defense." *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991) (quoting *State Mutual Ins. Co. v. Bragg*, 589 A.2d 35, 36 (Me. 1991)). "The insurer has a duty to defend if the complaint shows any potential that the facts ultimately proved may come within the scope of coverage provided under the policy." *Id.* (quoting *Lavoie v. Dorchester Mut. Fire Ins. Co.*, 560 A.2d 570, 571 (Me. 1989)).

In its letter dated April 3, 2008, Stewart Title highlighted policy exceptions in policy schedule B, which read:

> This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:
>
> . . . .
>
> 3. Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.
>
> . . . .
>
> 11. Subject to any exceptions, reservations, restrictions, easements or conditions set out in the attached Exhibit A.

Stewart Title explained to the Smiths that the right-of-way was described in both the records and the policy, and that Faber's action only concerned the use and location of the right-of-way's boundaries on the earth. An accurate survey would have revealed that the Smiths had placed their curbs in the right-of-way, making "the Faber lawsuit . . . precisely the type of matter contemplated by [the Survey Exception in paragraph 3]." Stewart Title's reasoning is persuasive.

As a preliminary matter, it is important to recognize what issues were *not* raised or implicated by Faber's complaint. Faber's action was not a case with conflicting or inaccurate deeds, a dispute over the described metes and bounds

4

of a property, or a question of the right-of-way's existence. From the complaint, it was solely an action to determine where the unambiguous, undisputed metes and bounds of the deeded right-of-way were actually located on the ground. This does not implicate any of the positive coverage provisions in the policy and distinguishes Faber's action from the many cases cited by the Smiths, all of which involved conflicting or inconsistent deeded property descriptions. Those were cases where a thorough search of the land records would have revealed the discrepancies and alerted the searcher to the conflict.

Survey Exceptions like the one in the Smiths' policy are well established in the law and are not ambiguous. *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*, 562 A.2d 208, 216 (N.J. 1989) ("[T]he survey exception is neither vague nor unenforceable. . . . [It] has been approved by the Commissioner of Insurance. Identical or similar language has been approved by other courts and scholars."); 16-92 Powell on Real Property § 92.12; *see Penney v. Capitol City Transfer, Inc.*, 1998 ME 44, ¶¶ 6–7, 707 A.2d 387, 389 (survey exception did not exclude coverage where complaint challenged the accuracy of the policy's property description); *Reed v. Lawyers Title Ins. Corp.*, 1992 Me. Super. LEXIS 194, ** 4–6 (July 30, 1992) (explaining and applying survey exception). The Supreme Court of New Jersey has succinctly stated that "the very purpose of a [S]urvey [E]xception is to exclude from coverage errors that would be revealed not by a search of public records, but by an accurate survey." *Walker Rogge, Inc.*, 562 A.2d at 217. This precisely describes the error implicated in Faber's complaint. Had the Smiths conducted an accurate survey at any time before or after they acquired their property, they would have known where the precise boundaries of the right-of-way fell and could have avoided placing obstructions within it.

5

The Smiths nevertheless claim that the Survey Exception is ambiguous in this case because the policy language might be interpreted to except only those "risks that an insured could have eliminated by choice at the time the property was purchased . . . ." The challenged language excepts coverage for: "Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises." Contrary to the Smiths' argument, the Survey Exception's plain language does not implicate any temporal limitations. Other coverage provisions expressly limit themselves to risks and conditions present at the policy date, but this language of temporal limitation is conspicuously absent from the Survey Exception and it would be unreasonable to read it in.

Even if the Smiths are correct and the Survey Exception is limited to risks present at the policy date, the issues raised in Faber's complaint would still fall within the exclusion. The right-of-way existed when the Smiths purchased their property and was accurately described in both the policy and the relevant deeds. While the complained-of curbs were not present when the Smiths' purchased their property, the boundary question raised by Faber's complaint was and the Survey Exception applies.

Notwithstanding the Survey Exception, the Smiths claim that Faber's complaint triggered Stewart Title's duty to defend because Faber could have proven other facts creating a covered liability. They state that "the crux of the claim brought by Faber was not use of an easement listed in the deed, but rather the location of the boundary of the Smiths' property," with a potential consequence being "that structures on the Smiths' property would violate a

boundary set-back. Although Faber's claim did include certain issues regarding the easement, the central matter in dispute was the location of the boundary."

Plaintiff is incorrect. Faber's complaint only alleges that the Smiths had placed an obstruction in the right-of-way, and sought to demarcate the right of way on the earth. The deeds attached to the complaint revealed that there was no dispute over the title documents or the metes and bounds described therein, only over the physical location of the boundaries so described. The "certain issues regarding the easement" were the only issues raised in Faber's complaint. While other boundaries and set-backs might have been implicated, the implication is only evident when extrinsic documents are considered. The comparison test precludes consideration of such documents. *See Elliott v. Hanover Ins. Co.*, 1998 ME 138, 711 A.2d 1310. Faber's complaint taken alone does not appear to raise any issues that would not fall under the Survey Exception.

Even if Faber's complaint raised the issues of the property boundary and set-backs, the result would be the same. Despite the Smiths' protests, boundary-line disputes fall within a Survey Exception like the one in the Smiths' policy. *Reed v. Lawyers Title Ins. Corp.*, 1992 Me. Super LEXIS 194, ** 2–5 (July 30, 1992). Faber's complaint reveals that the title descriptions were consistent and did not overlap, so any boundary-line dispute would be a matter of proper surveying within the Survey Exception.

Regarding potential set-back violations, while the policy might well provide coverage for liability arising from a violation that existed on the policy date, Faber's action would not have imposed liability on that basis. Faber only sought remedies for the Smiths' obstruction of her easement. Stewart Title's duty to defend would be triggered in a subsequent action brought to enforce the set-

7

back requirements, but not in the initial action that merely revealed the violation. *See Penney v. Capitol City Transfer*, 1997 Me. Super. LEXIS 145, \* 12 (May 2, 1997) (citing Theodore C. Taub, *Rights and Remedies Under a Title Policy, in* TITLE INSURANCE AND YOU: WHAT EVERY LAWYER SHOULD KNOW! 69, 74 (James Pedowitz ed., 1979)) (reversed on other grounds).

Faber could not have proven any facts on her complaint that would have given rise to a claim within the policy's coverage. Though an insurer's duty to defend its insured is broad, Stewart Title had no duty to defend the Smiths in Faber's action.

## The entry is:

Stewart Title was not obligated to provide the Smiths with legal defense. As a result, the Smiths' motion for summary judgment is **denied,** and Stewart Title's motion for summary judgment is **granted.**

DATE: _____

Roland A. Cole
Justice, Superior Court

G ROBERT SMITH ET AL VS STEWART TITLE GUARANTY COMPANY
UTN:AOCSsr  -2009-0005044                        CASE #:PORSC-CV-2009-00042
--------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE       DATE
01 0000002474 ATTORNEY:POLIQUIN, JAMES D
ADDR:415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
    F FOR:G ROBERT SMITH                         PL        RTND  01/15/2009
    F FOR:CATHERINE A SMITH                      PL        RTND  01/15/2009

02 0000009638 ATTORNEY:GREENFIELD, ZACHARY I
ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046
    F FOR:STEWART TITLE GUARANTY COMPANY         DEF       RTND  01/30/2009


        Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.                       I