Me✓

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-PORSC-15-196

CITY OF SOUTH PORTLAND )
)
and )
)
PATRICIA DOUCETTE )
)
Plaintiffs )
)
v. )
)
MAINE MUNICIPAL ASSOCIATION, )
)
)
Defendant )
)

**STATE OF MAINE**
Cumberland, ss, Clerk's Office

**FEB 26 2016**

**RECEIVED**

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

This matter is before the court on the parties' competing motions for summary judgment, which are limited as to whether Maine Municipal Association (herafter "MMA") is obligated to provide a defense to Plaintiffs in their capacity as defendants in an underlying complaint for declaratory and injunctive relief presently pending in the United States District Court for the District of Maine.

## I.     BACKGROUND

The parties' statements of material fact are happily short and concise in keeping with the rule, as they must by necessity be, given the narrow inquiry involved in resolving the duty to defend. The material facts are not in dispute.

South Portland City Council enacted Ordinance #1-14/15 (herafter "Ordinance"), which amended the City's Zoning Ordinance to prohibit the bulk loading of crude oil onto marine tank vessels. Patricia Doucette, the City's Code Enforcement Officer, is the municipal official charged with enforcing the City's Zoning Ordinance.

On February 6, 2015, Portland Pipeline Corporation and American Waterways Operators filed a lawsuit against the City of South Portland (hereafter the "City") and Ms. Doucette in the United States District Court for the District of Maine challenging the Ordinance. The Complaint is captioned as "Complaint for Declaratory and Injunctive Relief," and specifically and repeatedly requests "declaratory and equitable relief" (hereafter the "Underlying Complaint").

MMA is a public, self-funded pool established pursuant to 30-A M.R.S. § 2251, *et seq.* The City is a member of the MMA risk pool, and since July 1, 2014, MMA has provided liability coverage to the City pursuant to a Coverage Certificate, including a Public Officials Liability Endorsement (hereafter "Certificate").

The City tendered the defense of the Underlying Complaint to MMA on February 9, 2015. By letter dated February 25, 2015, and received by the City and Ms. Doucette on February 27, 2015, MMA denied coverage and indicated that it would neither provide a defense nor indemnify the City in connection with the Underlying Action. MMA denied a request made by the City and Ms. Doucette to reconsider its position by letter dated April 28, 2015.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

2

## III.  ANALYSIS

Whether an insurer has an obligation to defend its insured against a complaint is a question of law. *Elliot v. Hanover Ins. Co.*, 1998 ME 138, ¶ 6, 711 A.2d 1310. A determination whether there exists a duty to defend is resolved by comparing the complaint with the terms of the insurance contract. *Id.*   If the complaint contains allegations that, if proved, could fall within coverage afforded by the policy, then the insurer must provide a defense. *Hardenbergh v. Patrons Oxford Ins. Co.*, 2013 ME 68, ¶ 13, 70 A.3d 1237. "An insurer's duty to defend arises exclusively from the allegations in the complaint and the language of the policy." *Id.* Therefore an insurer may appropriately refuse to defend an insured if the allegations of the complaint are not within the threshold grant of coverage or if they fall entirely within a policy exclusion. *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 13, 36 A.3d 876.

Although the duty to defend is broad, it is not limitless. The duty to defend "does not encompass alleged hazards not within the scope of the policy." *Prime Tanning Co. v. Liberty Mut. Ins. Co.*, 750 F. Supp. 2d 198, 208 (D. Me. 2010); *Baywood Corp. v. Me. Bonding & Cas. Co.*, 628 A.2d 1029, 1030-31 (Me. 1993) (finding no duty to defend when a complaint alleged "a business risk specifically excluded from the policy"). A duty to defend "cannot be triggered by pure speculation as to conduct or causes of action that are not either set forth in, or fairly suggested by, the allegations of the complaint." *W. World Ins. Co. v. Am. & Foreign Ins. Co.*, 180 F. Supp. 2d 224, 232 (D. Me. 2002) (applying Maine law); *accord Reliance Ins. Co. v. Shenandoah S., Inc.*, 81 F.3d 789, 791 (8th Cir. 1996) (applying Missouri law) (explaining that if the "complaint against the insured alleges facts not within the coverage of the insurance policy, no duty devolves upon the insurer").

3

## A. The Underlying Complaint

The Underlying Complaint is unusually specific in seeking declaratory and injunctive relief. Just below the caption it is titled, "COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF." In the introductory paragraph, explaining the nature of the action being brought, the plaintiffs in the Underlying Complaint state, "[t]his is an action for declaratory and equitable relief challenging an ordinance adopted by the City on July 21, 2014." A principled examination of the remaining allegations leads ineluctably to the conclusion that there is no potential for anything other than equitable relief. This is not a case in which the court is pressed to divine from a vaguely drafted complaint the potential for coverage. In those circumstances the benefit of the doubt reasonably redounds in favor of the insured. Plaintiff concedes that among the nine counts in the Underlying Complaint, only Count VII triggers MMA's duty to defend. The court agrees that there is no plausible argument that MMA owes a duty to defend based on allegations contained those other counts. Counts 1-6, 8 and 9 allege variously that the Ordinance is preempted by various constitutional provisions and seeks only a declaration to that effect.[1] This is supported by the nine-paragraph prayer for relief at the end of the Underlying Complaint, which requests certain declarations, injunctive relief, and an award of attorney's fees and court costs. As such, the court concerns itself only with Count VII, which provides as follows:

132. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133. The Ordinance deprives Plaintiffs of their rights secured by the United States Constitution, as set forth above, under color of state law, thereby violating 42 U.S.C. § 1983.

---

[1] Count I Supremacy Clause – The Pipeline Safety Act; Count II Supremacy Clause – Foreign Affairs; Count III Supremacy Clause – The Port and Waterways Safety Act; Count IV Maritime Preemption; Count V Commerce Clause; Count VI Due Process, Excessive Delegation, and Equal Protection; Count VII Civil Rights Act Violation;

4

134.    Plaintiffs are suffering and will suffer irreparable harm as a result of being deprived of their constitutional rights and are entitled to declaratory and injunctive relief against the City and Doucette in her official capacity.

*Plaintiff's Statement of Material Facts, Exhibit A.*

B.    The Policy

The Policy at Section III, provides both "General Liability" coverage ("Agreement D") and "Public Officials and Employment Practices Liability" coverage ("Agreement H").

Agreement D provides a general grant of coverage "to pay those sums which a Member shall be obligated to pay by reason of liability imposed upon the Member by law or assumed by the Named Member under written contract or agreement for damages, direct or consequential, as defined by the term "Ultimate Net Loss," on account of "bodily injury"…and/or "property damage." *Plaintiff's Statement of Material Facts,* Exhibit B, page GL-0001.

Agreement H provides a grant of coverage "to pay those sums which the Member shall be obligated to pay by reason of liability imposed upon the Member by law for damages, direct or consequential, as defined by the term 'Ultimate Net Loss,' on account of any 'Wrongful Act' of the Member." *Plaintiff's Statement of Material Facts,* Exhibit B, page GL-0011. "Wrongful Act" is defined by the Policy to include "[v]iolation of civil rights protected under 42 U.S.C. § 1981 *et seq.*

For coverage to adhere under either grant of coverage for Agreement D or Agreement H, the damages sought must fall within the definition of the term "Ultimate Net Loss." Ultimate Net Loss is defined as follows:

> The total sum in excess of any other valid insurance which the Member becomes obligated to pay as damages because of "bodily injury," "property damage," "advertising injury," or "wrongful act" claims or "suits," either through adjudication or settlement to which we agree. "Ultimate Net Loss" does not include salaries of the Member's

5

employees; expenses, fees, costs and charges incurred by the Member or by us in litigation, settlement, adjustment and investigation of claims or "suits"; punitive or exemplary damages; any damages that are a multiple of compensatory damages; penalties or injunctive, non-monetary or restitutionary relief.

Defendant MMA also includes argument relating to various exclusionary provisions. The only exclusion that contributes to the discussion regarding the duty to defend is Common Exclusion 11, which provides that there is no coverage for any "claim" or "suit" seeking injunctive or non-pecuniary relief. See, GL-0022. Because the court concludes it is not necessary to reach the issue of whether any of the other exclusions would otherwise apply, the court declines to discuss them further other than to note that exclusions often rely on factual nuances rarely revealed in the allegations of a Complaint and for that reason seldom form an appropriate basis upon which to deny a defense.

C.     The Comparison Test

Plaintiffs contend that count VII, alleging a violation of civil rights, has the potential to fall within coverage and therefore MMA must provide a defense against all claims as the underlying facts are inextricably related to all of the counts of the Underlying Complaint. Plaintiffs stipulate the settled law; to wit, that claims for injunctive and equitable relief are not considered "damages" within the meaning of an insuring agreement and are therefore not covered. Moreover, the Plaintiffs are correct in abandoning any argument that potential coverage could be found at Agreement H, which is for "damages" because of "bodily injury" and "property damages," among other things. There are no such allegations in the Underlying Complaint. *See Patrons v. Marois*, 573 A.2d 16, 20 (Me. 1990) (equitable and injunctive relief not "damages" under general liability grant of coverage). The court agrees.

Plaintiffs therefore focus on Count VII, and coverage afforded through Agreement H of the Policy. Agreement H bottoms its grant of coverage on damages caused by a "Wrongful Act," which is in turn defined in part to include a violation of civil rights under 42 U.S.C. § 1981 *et seq.* Count VII makes out an allegation for a civil rights violation. However, both Agreement D and H define "damages" through the phrase, "Ultimate Net Loss." That definition, *supra*, specifically excepts "punitive or exemplary damages; any damages that are a multiple of compensatory damages; penalties or injunctive, non-monetary or restitutionary relief." Count VII provides that "Plaintiffs are suffering and will suffer irreparable harm as a result of being deprived of their constitutional rights and are entitled to declaratory and injunctive relief against the City and Doucette in her official capacity." Irreparable harm traditionally is understood to mean harm for which the law cannot adequately provide a remedy through traditional common law damages. Not coincidentally, the next clause seeks declaratory and injunctive relief. When read alone or in conjunction with the other allegations, the only conclusion the court can draw is that the Complaint expresses an intent and does in fact affirmatively foreclose the potential for any relief that is not otherwise injunctive.[2]

Moreover, a general prayer for relief does not enhance Plaintiffs' arguments and no such general prayer for relief was expressed in the Underlying Complaint. *See York Golf & Tennis Club v. Tudor Ins. Co.*, 2004 ME 52, 845 A.2d 1173. The prayer for relief in the Underlying Complaint was specific and included only declaratory and injunctive relief, and attorney's fees and costs, which was all the relief that was potentially supported by the allegations contained therein.

---

[2] The Complaint seeks costs of suit and attorney's fees. 42 U.S.C. § 1988. These claims are not for compensatory damages in keeping with *Marois*. *See also, Trask v. Automobile Ins. Co.*, 1999 ME 94, 736 A.2d 237. The matter is well settled otherwise. *Huto v. Finney*, 437 U.S. 678, n.24 (1978).

Plaintiffs argue that the civil rights claim leaves open the potential that money damages could be awarded. Money damages in civil rights actions are extraordinarily rare and limited. More importantly for present purposes, the specific and extensive allegations in the Underlying Complaint belie any potential for such relief. There simply is no allegation for which money damages could be awarded. The allegations neither support the potential for money damages nor express intent to claim such relief. The precise opposite is in fact true. Under these circumstances, the court is not inclined to blinker itself to the reality of the extensive and precise allegations that remove the potential for coverage under the Policy. The duty to defend is not so broad so as to require the court to engage in a results-oriented fiction that runs counter to the comprehensive and specific allegations of the Underlying Complaint.

The comparison test is a judicially-created tool simply to give impartial effect to a contractual bargain between the parties to an insurance agreement. The comparison test is not found in any insuring agreement. The comparison test does not possess talismanic properties such that its application makes suddenly appear the potential for covered claims in the face of stated claims to the contrary. It is merely a tool, the application of which should be guided by the underlying goals it serves; first among those, to give equal effect to contractual bargain of both parties to the insuring agreement. For the comparison test to mean anything it must be limited by something more intellectually principled than the imagination of the court untethered from a reasonable examination of the allegations actually made.

In this case, one's imagination is circumscribed by the 35-page Complaint, which itself is fashioned as a "Complaint for Declaratory and Injunctive Relief" and explicates in great and repeated detail conduct for which the potential for only equitable and non-pecuniary relief is apparent. It is not merely the failure of the Underlying Complaint to expressly request money

8

damages that leads the court to its conclusion. Plaintiffs argue such a failure should be disregarded by the court in determining whether a defense is owed. The court agrees that were that the only issue, it would look to the allegations in the Complaint to determine whether they fairly could be said to raise a claim or relief within coverage, and not consider the failure of the plaintiff to expressly make a claim for money damages as dispositive. To the contrary, it is precisely the opposite nature of the allegations in addition to the equitable relief requested which forecloses any potential for coverage. The Underlying Complaint makes exclusive requests for equitable relief because the nature of the predicate allegations could lead to no other result. As such, MMA is not obligated to provide a defense to the City and Ms. Doucette.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs' motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 2/25/16

Lance E. Walker
Justice, Superior Court

9