1998 ME 138

**Warren ELLIOTT**

v.

**The HANOVER INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Dec. 3, 1997.

Decided June 4, 1998.

Peter Clifford (orally), Kennebunk, for plaintiff.

James D. Poliquin (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Before ROBERTS, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] The Hanover Insurance Company appeals from the summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in Warren Elliott's favor and awarding him damages in the amount of $151,800. Hanover also challenges the court's order awarding Elliott pre- and post-

judgment interest. Elliott cross-appeals, challenging the court's damage award. We affirm in part and vacate in part.

I.

[¶ 2] Richard L. Castonguay is a self-employed woodsman who resides in East Livermore. He owns numerous pieces of logging equipment, such as a skidder, a bulldozer, and a pulp truck. He has a 20–by 40–foot garage adjacent to his residence in which he stores the tools and equipment he uses for logging. He maintains and repairs the equipment in the driveway next to his house.

[¶ 3] Castonguay supplements his logging income by trading in scrap metal and by selling firewood. It was in his capacity as a scrap metal purchaser that he first met Warren Elliott. In May 1994 Elliott visited Castonguay's residence to sell him some scrap metal. Prior to Elliott's arrival, Castonguay had used a torch on the skidder to remove some chains. Elliott claims that as he was walking on Castonguay's driveway, he stepped on hot molten metal and injured his foot.

[¶ 4] At the time of Elliott's injury, Castonguay was insured by a homeowners policy issued to him by Hanover.[1] Hanover was notified that Elliott had been injured on Castonguay's property. In February 1995 Hanover notified Castonguay that his homeowners policy did not provide coverage for Elliott's injury. Elliott was subsequently informed of Hanover's decision to deny coverage. Elliott then sued Castonguay for negligence. In October 1995 Elliott and Castonguay agreed that Castonguay would not defend the lawsuit and would assign his rights under the policy to Elliott. Elliott in return agreed not to execute on a judgment in his favor. The court (Androscoggin County, *Alexander, J.*) thereafter awarded Elliott a default judgment in the amount of

---

1. The policy contained the following exclusion clause:

    1. Coverage E—Personal Liability and Coverage F—Medical payments to others do not apply to "bodily injury" or "property damage":

        ...

    b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business[.]

$326,340 in his negligence action against Castonguay.

[¶ 5] In June 1996 Elliott filed a complaint to reach and apply the insurance proceeds pursuant to 24–A M.R.S.A. § 2903 (1990)[2] against Hanover for its failure to defend Castonguay in his lawsuit with Elliott. The court (Cumberland County, *Mills, J.*) subsequently granted Elliott leave to amend his complaint to include a count for a bad faith refusal to settle within the policy limits. In March 1997 the court granted a summary judgment in Elliott's favor, concluding that Hanover had breached its duty to defend Castonguay and that it was bound by the default judgment entered in the negligence action and estopped from asserting noncoverage as a defense in the case at bar. The court ordered a hearing to determine the damages that resulted from Hanover's failure to defend Castonguay and subsequently found Hanover liable to Elliott in the amount of $151,800. This appeal and cross-appeal followed.

## II.

[¶ 6] Hanover's first contention on appeal is that the court erred by failing to consider, in its determination that Hanover had breached its duty to defend, undisputed facts that showed that Elliott's injury was not covered by the policy. We disagree. Whether an insurer has an obligation to defend its insured against a complaint is a question of law. *Northern Sec. Ins. Co. v. Dolley,* 669 A.2d 1320, 1322 (Me.1996). A determination whether there exists a duty to defend is resolved by comparing the complaint with the terms of the insurance contract. *Id.* "If the allegations in the underlying tort action are within the risk insured against and there is any potential basis for recovery, the insurer must defend the insured regardless of the actual facts on which the insured's ultimate liability may be based." *Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350, 1352 (Me.1996).

[¶ 7] Hanover urges us to create an exception to the pleading comparison test for situations in which undisputed facts show that the injury in question was not covered by the policy. We have, however, repeatedly used the pleading comparison test when determining if an insurer has a duty to defend, *see, e.g., Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶¶ 5–7, 707 A.2d 387, 388–89; *Patrons Oxford Mut. Ins. Co. v. Garcia,* 1998 ME 38, ¶¶ 5–9, 707 A.2d 384, 385–86; *Commercial Union Ins. Co. v. Royal Ins. Co.,* 658 A.2d 1081, 1082–83 (Me.1995), and have explained our rationale for the rule as follows:

> If we were to look beyond the complaint and engage in proof of actual facts, then the separate declaratory judgment actions ... would become independent trials of the facts which the [insured] would have to carry on at his expense.... We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.

*Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 227 (Me.1980). In *Patrons Oxford* we declined an insurer's invitation to create an exception to the general rule in situations where the insurer asserts that the applicability of a coverage exclusion is undisputed. *Patrons Oxford,* 1998 ME 38 at ¶ 9, 707 A.2d at 386. In doing so, we noted that such an exception would require the court to make a factual inquiry regarding the applicability of a coverage exclusion and would require the insured to engage in the litigation of at least some aspects of the injured party's claim. *Id.* This result would be inconsistent with the principles enunciated in *Dingwell.* An insured should not be required to litigate the underlying facts of a claim in order to obtain a defense to the litigation when he has already obligated an insurer by contract to defend him. Confining our review to an examination of the complaint and the policy,

---

2. 24–A M.R.S.A. § 2903 (1990) provides:

The liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs. The rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insurer to make payment on account of such loss or damage.

we conclude that there is a potential that the facts ultimately proved may come within the coverage. We therefore affirm the trial court's grant of a summary judgment in favor of Elliott on this issue.

### III.

■ [¶ 8] Hanover next asserts that regardless whether it had a duty to defend Castonguay, it did not forfeit any right it may have to argue the issue of indemnification and that we did not intend our decision in *Marston v. Merchants Mut. Ins. Co.,* 319 A.2d 111 (Me.1974), to preclude an insurer who fails to provide a defense to the underlying action from asserting the defense of noncoverage in a subsequent action brought by the insured or the insured's assignee. We agree.

[¶ 9] In *Marston* we stated:

It is ... well established that an insurer who had reasonable notice of the pendency of an action by the injured person against the insured and was requested to assume its defense but declined to do so[,] electing to disclaim coverage, is bound by the judgment in that action as to issues which were or might have been litigated therein in a subsequent suit by the injured person for recourse to the policy.

*Id.* at 114. Elliott argues that the language quoted above precludes Hanover from raising noncoverage as a defense in his action against Hanover. We did not intend, however, that our decision in *Marston* have such a broad connotation.

[¶ 10] Many courts have grappled with the issue whether an insurer who wrongfully refuses to defend a complaint that alleges facts within coverage is estopped from asserting noncoverage as a defense in a subsequent action brought by the insured or an assignee of the insured. *See generally* 14 RONALD A. ANDERSON, COUCH ON INSURANCE 2D § 51:73 (2d ed. 1982 & Supp.1997); 7C J.A. APPLEMAN, INSURANCE LAW & PRACTICE § 4689 (Walter F. Berdal ed., 1979 & Supp.1997). Some courts have precluded an insurer from

denying policy coverage in a subsequent lawsuit when the insurer has breached its duty to defend. *See, e.g., Fidelity & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.,* 122 Ill. App.3d 301, 77 Ill.Dec. 848, 461 N.E.2d 471, 474 (1983) (insurer estopped from asserting noncoverage defense if it fails to defend under a reservation of rights and to file a declaratory judgment action to determine the scope of coverage). Other courts have held that an insurer is not estopped from asserting noncoverage as a defense if it fails to defend the insured. *See, e.g., Polaroid Corp. v. Travelers Indem. Co.,* 414 Mass. 747, 610 N.E.2d 912, 922 (1993) ("The statement made by some courts that the insurer is estopped to deny liability is simply a conclusion and fails to recognize that no estoppel is involved in any traditional sense because, in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment.").

■ [¶ 11] We agree with the court's reasoning in *Polaroid* that an unjustified refusal to defend should be treated as a breach of the insurance contract and that normal contract damage principles apply. *Id.* 610 N.E.2d at 921. "By finding the insurer has a duty to indemnify as a penalty for refusing to defend, even if no coverage exists, the court [would] improperly enlarge[ ] the bargained-for coverage." *Servants of Paraclete, Inc. v. Great American Ins. Co.,* 857 F.Supp. 822, 833 (D.N.M.1994). Moreover, if an insurer who refuses to defend were estopped from asserting the lack of coverage as a defense in a subsequent action, then the insurer's duty to indemnify would be coextensive with its duty to defend. We, however, have repeatedly stated that an insurer's duty to indemnify is independent from its duty to defend and that its duty to defend is broader than its duty to indemnify. *See, e.g., Travelers Indem. Co. v. Dingwell,* 414 A.2d at 224. An insurer that breaches its duty to defend therefore is not estopped from asserting noncoverage as a defense in a subsequent action brought by the insured or the insured's assignee.[3] The insurer, however, has the bur-

---

3. We are aware that the United States District Court for the District of Maine in *Anderson v. Virginia Surety Co.,* 985 F.Supp. 182 (D.Me.

1998), construed our decision in *Cambridge Mut. Fire Ins. Co. v. Perry,* 1997 ME 94, 692 A.2d 1388, to prohibit an insurer that breaches its

den of proving that the claim was not within the policy's coverage when it wrongfully declines to defend a claim. *Polaroid, Inc.*, 610 N.E.2d at 922. Hanover is also bound by the default judgment as to any factual issues that might have been litigated in the underlying negligence action. *Marston v. Merchants Mut. Ins. Co.*, 319 A.2d at 114. Moreover, nothing in this opinion should be construed to prohibit an insured from protecting his interests once an insurer breaches its duty to defend. *Cambridge Mut. Fire Ins. Co. v. Perry*, 1997 ME 94, ¶ 10, 692 A.2d 1388, 1391. Because we conclude that the matter must be remanded to the trial court for a determination whether Elliott's injury was covered by the policy, it is premature to address Elliott's and Hanover's challenge to the court's damage award and Hanover's appeal of the court's order awarding Elliott pre- and post-judgment interest.

The entry is:

Judgment affirmed in part and vacated in part. Remanded for further proceedings consistent with this opinion.

---

duty to defend from asserting noncoverage as a defense. *Anderson v. Virginia Surety Co.*, 985 F.Supp. at 189. We, however, did not intend

that our decision in *Perry* would have such a broad connotation.