1999 ME 173

**YORK INSURANCE GROUP
OF MAINE**

v.

**Richard O. LAMBERT.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 15, 1999.
Decided Nov. 24, 1999.

John J. Wall III, Noah D. Wuestoff, Monaghan, Leahy, Hochadel & Libby, LLP, Portland, for plaintiff.

Thomas F. Hallett, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Defendant Richard O. Lambert appeals from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of his insurer, plaintiff York Insurance Group of Maine, ruling that it had no duty by virtue of a policy of homeowner's insurance to defend Lambert in an underlying probate action. Because the court erred in considering evidence beyond the pleadings, we vacate the judgment.

[¶ 2] The facts as developed for purposes of summary judgment may be summarized as follows: Margaret Umbaugh, individually as an heir-at-law entitled to an intestate share, and together with David Lambert, as co-special representatives of the Estate of Hugh A. Graff, brought an action in York County Probate Court against Lambert. The complaint alleged the following facts: Lambert was the stepson of Hugh Graff. Prior to his death, Hugh Graff was incompetent. For a period prior to decedent's death, Lambert had a confidential or fiduciary relationship with the decedent. During that time period

Lambert exercised control of the decedent's person and his property, obtaining a power of attorney from decedent and using the power of attorney to transfer tangible and intangible personal property from decedent to himself. The complaint included, *inter alia*, claims for breach of fiduciary duty (constructive trust), conversion, and interference with an expectancy of inheritance.

[¶ 3] York Insurance filed a declaratory judgment action requesting the court declare that its insurance contract with Lambert did not cover the allegations contained in the complaint. York Insurance filed a motion for summary judgment, together with a supporting memorandum of law and a statement of material facts. The statement of material facts was supported by answers to interrogatories. After hearing, the court entered an order granting York Insurance's motion for summary judgment. The court ruled, based on the answers to interrogatories, that York Insurance did not have a duty to defend Lambert in the underlying probate action on the basis that the damages sought were economic damages, which are not covered by the homeowners insurance policy. From this ruling, Lambert appeals.

[¶ 4] "'Whether an insurer has a duty to defend in a particular case is a question of law.'" *Penney v. Capitol City Transfer, Inc.*, 1998 ME 44, ¶ 4, 707 A.2d 387, 388 (citations omitted). The longstanding rule is that we "'determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy.'" *Id.* (citations omitted). A duty to defend exists "'[i]f a complaint reveals a *potential* ... that the facts ultimately proved may come within the coverage.'"" *Id.* (citations omitted).

[¶ 5] Lambert contends that the court erred when it looked beyond the pleadings and considered evidence extrinsic to the complaint. We agree. We recently restated the general rule as follows: "'Except in limited circumstances, we

have held that an insurer cannot avoid its duty to defend by establishing, before the underlying action has concluded, that ultimately there will be no duty to indemnify.'" *Penney*, 1998 ME 44, ¶ 5, 707 A.2d at 388–89 (citations omitted). We explained the reason for the rule as follows:

> To secure the just, speedy and inexpensive determination of an action involving a duty to defend and a duty to indemnify and avoid a duplication of trials requires that courts proceed in the following order: the determination of a duty to defend, then the determination of liability in the underlying action, and finally the determination of the duty to indemnify.

*Id.*, 707 A.2d at 389 (citation omitted). We have also explained the rationale as follows:

> If we were to look beyond the complaint and engage in proof of actual facts, then the separate declaratory judgment actions ... would become independent trials of the facts which the [insured] would have to carry on at his expense.... We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.

*Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 7, 711 A.2d 1310, 1312 (citation omitted). "The duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify." *Penney*, 1998 ME 44, ¶ 15, 707 A.2d at 389. As in *Penney*, the present case offers no reason for deviating from the pleading comparison test that has long been the rule in Maine.

[¶ 6] The underlying complaint includes allegations for breach of a fiduciary duty (constructive fraud), conversion, and interference with an expectancy of inheritance. York Insurance argues that the underlying complaint does not include a claim for bodily injury or property damage, and more specifically that neither the claims asserted nor the facts alleged give

any suggestion of bodily harm, sickness or disease.

[¶ 7] Confining our review to an examination of the complaint and the homeowners insurance policy, we conclude that a potential exists that the facts alleged may result in bodily injury within the coverage of the homeowners policy. For example, although on its face the complaint does not specifically include allegations of emotional distress or emotional pain and suffering, the general allegations of the interference with an expectancy of inheritance claim carry the possibility of an award for emotional distress. *See* RESTATEMENT (SECOND) OF TORTS §§ 774B cmt. e, 774A(1)(c) (1979).

[¶ 8] We have held that "[u]nless excluded, a claim for emotional distress triggers an insurer's duty to defend under 'bodily injury' coverage if the emotional distress is caused by an 'accident or occurrence' within the meaning of the policy." *Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 600 (Me.1996). We explained the reasoning in a claim for wrongful termination of employment that "it is possible, albeit remotely so, that there would be coverage if the plaintiff can establish that he suffered 'bodily injury, sickness or disease' as a result of emotional distress caused by his discharge." *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1081 (Me.1991) (citation omitted). Thus, we need not address Lambert's other contentions that the breach of fiduciary duty and conversion claims also contain allegations of and requests for damages that could potentially be characterized as "bodily injury" or "property damage." As in *Penney*, "[e]ven though evidence beyond the pleadings may later establish the absence of a duty to indemnify, that evidence is not properly considered in determining the duty to defend." *Penney v. Capitol*

*City Transfer, Inc.*, 1998 ME 44, ¶ 7, 707 A.2d 387, 389 (citation omitted).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

ALEXANDER, J., with whom RUDMAN, J. and SAUFLEY, J., join, dissenting.

[¶ 9] I respectfully dissent. The Court's opinion accurately summarizes the current state of the law derived from some recent duty to defend cases. *Elliott v. Hanover Ins. Co.*, 1998 ME 138, 711 A.2d 1310 and *Penney v. Capitol City Transfer, Inc.*, 1998 ME 44, 707 A.2d 387.

1. Duty to defend is a question of law. *Elliott* at ¶ 6, p. 1312, *Penney* at ¶ 4, p. 388.

2. The duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *Id.*

3. The duty to defend exists if the complaint reveals a potential that the facts ultimately proved may come within the coverage. *Id.*

4. We do not consider evidence beyond the face of the complaint and the policy in determining duty to defend. *Elliott* at ¶ 7, p. 1312; *Penney* at ¶ 5, p. 388–89.

[¶ 10] However, the Court's opinion extends the law beyond where we have gone before, speculating about what the complaint might, *but does not,* allege to create a duty to defend under a new speculative comparison test.

[¶ 11] The complaint includes no allegations of emotional distress, bodily injury or property damage to generate a duty to defend under the York Insurance policy.[1]

---

1. The York Insurance policy defines the terms "bodily injury," "property damage" and "occurrence" as follows:

　1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

. . . .

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy pe-

The duty to defend is derived not from the face of the complaint but from speculation that proof of one of the economic torts alleged might "carry the possibility of an award for emotional distress."

[¶ 12] In one of our most recent duty to defend cases, *Johnson v. Amica Mutual Ins. Co.*, 1999 ME 106, 733 A.2d 977, we did not engage in such speculation about claims, like emotional distress, that might be, but were not, alleged. Instead we compared the words of the underlying complaint with a similarly worded homeowner's policy and ruled that the policy did not impose a duty to defend against a conversion claim; *Johnson* at ¶ 5, p. 979.

[¶ 13] Using the same test we used in *Johnson*, comparison of the text of the complaint and the language of the York policy, does not support the possibility of an award for emotional distress or other bodily injury or property damage as envisioned by the Court.

[¶ 14] The Court cites three counts of the underlying Probate Court complaint which, in its view, may raise a possibility for an award covered by the policy: (1) Breach of Fiduciary Duty (count IV); (2) Conversion (count V); and (3) Interference with Expectancy of Inheritance (count VI).

[¶ 15] The estate and the decedent are the entities alleged to have been wronged in the breach of fiduciary duty count. Certainly, neither could suffer emotional distress or other bodily injury from such a breach. To the extent that loss of value or assets of the estate due to the alleged breach of fiduciary duty might be construed as "property damage," such a loss would not be a covered loss because it is excluded as an "intentional loss" under the terms of the policy which define an excluded intentional loss as:

> any loss arising out of any act committed: (1) By or at the direction of an

'insured,' and (2) With the intent to cause a loss.

[¶ 16] Since the losses asserted in count IV, necessarily resulted from actions which Lambert voluntarily and knowingly undertook to reduce the assets of the estate, losses resulting from such intentional acts by Lambert are not a covered loss under the policy.

[¶ 17] Under the interpretation of "tangible property" and "intangible property" we adopted in *Johnson v. Amica Ins. Co.*, 1999 ME 106, ¶¶ 4–5, 733 A.2d at 978–79, it also appears that at least some of the items alleged to have been converted, for example bank accounts, were not "tangible property." Thus, their conversion or misuse was not "property damage" under the York policy.

[¶ 18] The same reasons would bar a claim under the York policy for the losses alleged in the conversion count, count V.

[¶ 19] Similar difficulties are faced in comparison of the terms of the policy and the interference with expectancy of inheritance count. This tort is more frequently called "wrongful interference with the expectancy of an inheritance." The key allegation of this count is that: "Defendant, by and through his overt actions described above, improperly and without justification, by means of fraud, intimidation and undue influence, interfered with plaintiff Umbaugh's expectancy." This paragraph, and the terminology of count VI, generally track the cause of action for wrongful interference with the expectancy of an inheritance as outlined in our recent cases, *Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039, 1041; *Plimpton v. Gerrard*, 668 A.2d 882, 885 n. 2 (Me.1995); *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me.1995).

[¶ 20] What is alleged to be damaged here is an intangible expectancy of benefits. That intangible expectancy is not covered under the policy's definition of

---

riod, in: (a) "Bodily Injury;" or (b) "Property Damage."

6. "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

"property damage" which "means physical injury to, destruction of, or loss of use of tangible property." *See Johnson v. Amica Mutual Ins. Co.*, 1999 ME 106, ¶¶ 4–5, 733 A.2d at 978–79.

[¶ 21] The Court notes that this count might carry "the possibility of an award for emotional distress." However, a person who may be one of many persons who might claim an expectancy of an inheritance, is only an "indirect" victim of a tortfeasors wrongful conduct against a decedent or an estate. Such an individual would not qualify to bring an emotional distress claim under our precedent in *Cameron v. Pepin*, 610 A.2d 279, 284–285 (Me.1992); *see also Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213, ¶¶ 15–17, 715 A.2d 955, 959. Additionally, a claim of wrongful interference with an expected inheritance can only succeed with proof of conduct sufficiently intentional, as indicated by the allegations in the complaint, that it would be excluded by the intentional loss exclusion of the York policy.[2]

[¶ 22] Thus, comparison of the allegations of the underlying complaint and the language of Lambert's homeowner's insurance policy, does not provide even a possibility that any allegation might be made that could trigger liability under the policy. The parties to Lambert's homeowner's insurance policy, in entering into the insurance contract, certainly did not intend that it would cover claims by estates alleging improper interference with the assets of estates, and the language of the York policy is sufficiently clear that such coverage is excluded.

Accordingly, I would affirm the judgment of the Superior Court.

---

**2.** *See Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039, 1041–42, indicating one element of the tort is "an intentional interference by a defendant through tortious conduct, such as fraud, duress or undue influence."