MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2016 ME 161
Docket:       Kno-15-282
Argued:       March 3, 2016
Decided:      November 3, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Concurrence:ALEXANDER, J.

DAWN M. HARLOR

v.

AMICA MUTUAL INSURANCE COMPANY

JABAR, J.

[¶1] Dawn M. Harlor appeals from a summary judgment entered by the Superior Court (Knox County, *Billings, J.*) in favor of Amica Mutual Insurance Company on Harlor's complaint that Amica breached Harlor's homeowner's insurance policy by failing to defend Harlor in a lawsuit against her. Because the suit against Harlor included allegations that could potentially result in an award of damages covered by Harlor's homeowner's policy, Amica was bound to provide Harlor a defense. We therefore vacate the judgment and remand for the entry of a summary judgment in favor of Harlor on her claim for breach of contract relating to the duty to defend and remand for further proceedings on Harlor's claim for indemnification.

## I. BACKGROUND

[¶2]  The relevant facts are not in dispute.  In March 2013, Jon and Winifred Prime brought suit against Harlor.  The suit arose from a dispute between the parties over the Primes' right to use a dock according to an easement Harlor had granted to the Primes.  The Primes alleged that, acting according to an agreement with Harlor, they made certain improvements to the dock that resulted in the removal of a restriction on the size of the boats they were allowed to maintain at the dock.  The Primes alleged that when Harlor later sold the dock, she obtained—through false statements and undue pressure—the Primes' agreement to a "Confirmation of Easement" that may not have reflected the removal of the boat size restriction.  The Primes further alleged that, following Harlor's sale, Harlor refused to confirm the Primes' right to use the dock for larger boats and made false statements regarding the Primes' right to use the dock.  Harlor's actions, the Primes alleged, resulted in uncertainty regarding the easement and prevented the Primes from selling property that benefitted from the easement.

[¶3]  The Primes brought a complaint against Harlor, seeking damages for slander of title, interference with an advantageous relationship, unjust enrichment, fraud, and negligent misrepresentation, and seeking through

separate counts a declaratory judgment and punitive damages. The crux of the suit was a determination as to whether, by the terms of the agreement between Harlor and the Primes, the Primes' improvements to the dock removed the boat size restriction contained in the easement.

[¶4] At all relevant times, Harlor was insured by Amica under a homeowner's insurance policy that provided that Amica would defend Harlor against claims that may result in covered damages. Harlor notified Amica of the Primes' suit and requested that Amica provide a defense. In April 2013, Amica denied Harlor's request based on its conclusion that the suit could not result in covered damages.

[¶5] Harlor settled the suit with the Primes and brought suit against Amica. Harlor sought a declaratory judgment that Amica had been obligated to provide Harlor with a defense to the Primes' suit and claimed a breach of contract based on Amica's failure to defend her. Both parties moved for summary judgment. The court granted Amica's motion, concluding that any damages that might have resulted from the suit against Harlor would not be covered by Harlor's policies and consequently did not give rise to a duty to defend.[1]

---

[1] The trial court relied on *Langevin v. Allstate Insurance Company*, in which we held that an insurer did not have a duty to indemnify an insured for emotional distress damages under a policy

## II. DISCUSSION

[¶6]  On appeal, Harlor argues that Amica had a duty to tender her a defense because the Primes' claim for interference with an advantageous relationship created a potential that the Primes could have proved facts at trial that would have established liability covered by Harlor's insurance policy.  She also contends that Amica is liable for the attorney fees she incurred in the underlying action with the Primes and in this declaratory judgment action, as well as the amount that she paid to settle the underlying claim.

A.    An Insurer's Duty to Defend

[¶7]  Whether an insurer has a duty to defend an insured is a question of law.  *York Ins. Grp. of Me. v. Lambert*, 1999 ME 173, ¶ 4, 740 A.2d 984.  As with summary judgment review in other contexts, here we consider de novo whether the trial court erred in granting summary judgment to Amica on Harlor's claim that Amica breached its duty to defend.  *See Hardenbergh v. Patrons Oxford Ins. Co.*, 2013 ME 68, ¶ 12, 70 A.3d 1237.  Because the relevant facts are not in dispute, we review the summary judgment for errors of law,

---

restricting coverage to claims for "bodily injury."  2013 ME 55, ¶ 18, 66 A.3d 585.  As discussed below, however, the duty to defend is broader than the duty to indemnify, and *Langevin* does not aid in a determination of whether an insurer has a duty to defend.  *See Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876.

including errors in the interpretation of the insurance policy. *See Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 5, 95 A.3d 79; *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 7, 66 A.3d 585. We therefore independently examine the language of the policy at issue to determine the scope of coverage, and then consider the general allegations of the Primes' complaint "to determine whether it falls within the scope of the policy's coverage." *Hardenbergh*, 2013 ME 68, ¶ 14, 70 A.3d 1237.

[¶8] To determine whether an insurer has a duty to defend, a court considers and compares two documents: the insurance policy and the underlying complaint against the insured. *Irving Oil, Ltd. v. ACE INA Ins.*, 2014 ME 62, ¶ 12, 91 A.3d 594. An insurer has a duty to defend an insured when the complaint, read broadly in conjunction with the policy, reveals the existence of any legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy.[2] *Howe*, 2014 ME 78, ¶¶ 6, 10, 95 A.3d 79; *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 833 (Me. 1983). Although courts "do not speculate about causes of action that were not stated[,] . . . our rules of notice

---

[2] "We have previously noted that the duty to indemnify is more narrow than the duty to defend. Whereas the duty to defend depends only upon the facts alleged in the complaint, the duty to indemnify depends upon the facts proved at trial." *Union Mut. Fire Ins. Co. v. Topsham*, 441 A.2d 1012, 1016 n.2 (Me. 1982).

6

pleading favor a broad construction of the duty to defend." *York Golf & Tennis Club v. Tudor Ins. Co.*, 2004 ME 52, ¶ 8, 845 A.2d 1173 (citations omitted). "The facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876 (quotation marks omitted) (citations omitted). We have explained the comparison test and its "low" threshold for triggering an insurer's duty to defend, *Irving Oil*, 2014 ME 62, ¶ 12, 91 A.3d 594, as a test and a threshold designed to "discourage mini-trials on the issue of the duty to defend," *Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991); *see Lambert*, 1999 ME 173, ¶ 5, 740 A.2d 984 ("We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense." (quotation marks omitted)).

B.    Harlor's Homeowner's Policy

[¶9]   Harlor's homeowner's insurance policy included the following coverage for personal liability:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** . . . caused by an **occurrence** to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an **insured** is legally liable. Damages include prejudgment interest awarded against an **insured**; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the **occurrence** has been exhausted by payment of a judgment or settlement.

[¶10] The policy defined "occurrence" in relevant part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in . . . [b]odily injury." The term "bodily injury" was defined as "bodily harm, sickness or disease, including required care, loss of services and death that results."

[¶11] Referencing the personal liability provision of her homeowner's policy, Harlor argues that Amica was required to defend her because the Primes could potentially have recovered damages for emotional distress and bodily harm caused by such distress on their claim of interference with an advantageous relationship.

8

C.  Duty to Defend Claim of Interference with an Advantageous Relationship

[¶12]   To establish a claim of interference with an advantageous relationship, the Primes would have had to prove "the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference."  *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995). Generally, a plaintiff claiming tortious interference alleges that the defendant interfered with a contract or prospective economic advantage involving the plaintiff and someone other than the defendant.  *See generally Currie v. Indus. Sec., Inc.*, 2007 ME 12, 915 A.2d 400; *Rutland v. Mullen*, 2002 ME 98, 798 A.2d 1104; *Petit v. Key Bank of Me.*, 688 A.2d 427 (Me. 1996); *MacKerron v. Madura*, 445 A.2d 680 (Me. 1982), superseded by statute, P.L. 1987, ch. 740, § 8 (effective Aug. 4, 1988) (codified at 14 M.R.S.A. § 8111(1)(E) (1980 & Supp. 1988)); *see also* 3 Dan B. Dobbs, *The Law of Torts* § 616 at 498 (2d ed. 2011).

[¶13]   At the outset, we disagree with the concurring opinion's proposition that Maine law demands that the fraud or intimidation required as an element of a tortious interference claim must be directed at an identified third party, not at the plaintiff.  We have never announced such a limitation on

Maine's common law, and we decline to do so now. As the First Circuit has noted, in Massachusetts, a plaintiff can make out a claim for this tort by alleging either (a) that the defendant interfered with the plaintiff's advantageous relationship with a third party by committing fraud or intimidation against the third party or (b) that the defendant interfered with the plaintiff's relationship with a third party by committing fraud or intimidation against the plaintiff. *See, e.g.*, *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010) (interpreting Massachusetts tort law); Restatement (Second) of Torts §§ 766A, 766B (Am. Law Inst. 1979).

[¶14]    Here, the Primes claimed in their complaint that Harlor interfered with the Primes' prospective advantageous relationship with potential buyers by committing fraud and intimidation against the Primes. This claim requires us to consider, as we do below, whether the Primes' complaint alleged facts that could give rise to the type of damages that would invoke Amica's duty to defend Harlor pursuant to Harlor's insurance policy.

[¶15]  We have not previously spoken definitively on the availability of emotional distress damages on a claim of interference with an advantageous relationship and, because the issue here is Amica's duty to defend, we need not do so now. *See Gagnon v. Turgeon*, 271 A.2d 634, 635 (Me. 1970) (holding

that a party who interferes with an advantageous relationship "is liable in damages for such injuries as naturally result therefrom"); Restatement (Second) of Torts § 774A(1)(c) (Am. Law Inst. 1979) ("One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for . . . emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference."); *see also Lambert*, 1999 ME 173, ¶ 7, 740 A.2d 984 ("allegations of the interference with an expectancy of inheritance claim carry the possibility of an award for emotional distress").

[¶16]  Although the Primes' claim for interference with an advantageous relationship did not specifically include allegations of emotional distress or bodily injury, or a request for money damages for the same, the comparison test transcends the specific factual allegations and forms of relief requested in the complaint.  "'Precision' . . . is not necessary for determining a duty to defend.  The correct test is whether a *potential* for liability within the coverage appears from whatever allegations are made."  *Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226 (Me. 1980).  Moreover, "the fact that the complaint itself did not request monetary damages, in its prayers for relief, does not end the matter.  A court can grant relief to a plaintiff that is not

requested in a complaint if the plaintiff is entitled to the relief and the judgment is not granted by default." *York Golf & Tennis Club*, 2004 ME 52, ¶ 12, 845 A.2d 1173. We accordingly look to the general allegations for the particular claims asserted in the underlying complaint to determine whether they could potentially support an award of covered damages for bodily injury caused by emotional distress, resulting from an "occurrence" within the meaning of Harlor's homeowner's insurance policy.

[¶17] In their complaint, the Primes asserted that Harlor "interfered with [their] attempts to sell their real estate through bad faith conduct, fraud[,] . . . intimidation, . . . [and] misrepresentations with respect to both the status of [their] easement and with respect to the Confirmation of Easement." The Primes further asserted that they were "damaged by [Harlor's] fraudulent interference in that they have been unable to sell their property."

[¶18] The Primes' allegations regarding the damages flowing from Harlor's allegedly tortious conduct arguably constitute an "accident or occurrence" within the meaning of the personal liability provisions of Harlor's homeowner's policy. *See Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 600 (Me. 1996) ("The 'accidental' nature of an event for purposes of a standard liability insurance contract . . . does not derive from the voluntariness of the act, but

12

rather from the unintentional nature of the consequences flowing from the act."). Because the Primes' allegations of Harlor's allegedly tortious actions—specifically, interference with the Primes' prospective advantageous relationship with potential buyers through intimidation and fraud—could have resulted in harm to the Primes, including bodily harm due to emotional distress, Harlor could have been found liable for a type of damages covered by the personal liability provisions of her homeowner's policy.[3]

[¶19]  Comparing the general allegations of the Primes' complaint with the terms of Harlor's homeowner's policy, there was a possibility that the Primes could have established that they suffered bodily injury as a result of emotional distress caused by Harlor's actions.  *See Douglas Dynamics*, 594 A.2d at 1081.  Amica was therefore bound by the terms of its insurance contract with Harlor to provide her a defense to the Primes' suit, and it breached that contractual obligation by failing to do so.[4]

---

[3]  Although we have never affirmatively announced that emotional distress bodily harm is a recoverable damage of this tort, neither have we declared that it is *not* recoverable.

[4]  "Because an insurer has a duty to defend if any cause of action alleged in a complaint could fall within the policy's liability coverage, we need not consider whether other theories of liability set forth in the [Primes'] complaint . . . would have independently given rise to a duty to defend." *Mitchell*, 2011 ME 133, ¶ 21, 36 A.3d 876 (citation omitted).

D.    Whether Amica is Liable for Harlor's Settlement

[¶20]  Having determined that Amica breached its duty to defend, we now consider the proper measure of Harlor's damages.  Although Amica concedes that its breach of the duty to defend would render it liable for the attorney fees that Harlor incurred in the underlying action with the Primes and in the instant action for a declaratory judgment,[5] it argues that it is not liable for Harlor's payment to the Primes in settlement because that payment does not establish that the Primes actually sustained an injury covered by Harlor's homeowner's policy.  Harlor argues that her settlement costs should be awarded as consequential damages for Amica's breach of the duty to defend, and that Amica, by breaching that duty, lost the right to hold Harlor to the burden of proving that she was liable for damages covered by her homeowner's policy.

[¶21] "Standard . . . liability insurance policies are contracts between an insurer and an insured: In each, the insurer makes promises, and the insured pays premiums, the one in consideration for the other, against the risk of

---

[5]  In a declaratory judgment "action pursuant to Title 14, chapter 707 to determine an insurer's contractual duty to defend an insured under an insurance policy, if the insured prevails in such action, the insurer shall pay court costs and reasonable attorney's fees."  24-A M.R.S. § 2436-B(2) (2015).  An insurer's breach of the duty to defend damages the insured "not only in the amounts the insured has expended in defending the underlying claim but also in the amount of reasonable costs the insured has incurred in protecting its contractual right to defense."  *Union Mut. Fire Ins. Co.*, 441 A.2d at 1017.

14

loss." *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 948 P.2d 909, 919 (Cal. 1997). An insurer's unjustified refusal to defend its insured constitutes a breach of the insurance contract, and the insured's claim for relief is analyzed pursuant to principles of contract damages. *Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 11, 711 A.2d 1310. An award of damages to the insured for breach of an insurer's duty to defend should therefore place the insured "in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning." *Foremost Ins. Co. v. Levesque*, 2007 ME 96, ¶ 10, 926 A.2d 1185 (quotation marks omitted).

[¶22] An insurer's breach of the duty to defend does not, when analyzed pursuant to ordinary principles of contract law, necessarily warrant an award of damages to the insured in reimbursement of a judgment or settlement related to the ultimate question of the insured's liability. We "have repeatedly stated that an insurer's duty to indemnify is independent from its duty to defend." *Elliott*, 1998 ME 138, ¶ 11, 711 A.2d 1310. In evaluating an insurer's liability for a settlement that potentially involves both covered and uncovered claims following the insurer's breach of the duty to defend, we are

mindful of the distinction between that duty and the narrower duty to indemnify.

[¶23] "[S]tandard . . . liability insurance policies provide that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for a covered claim." *Aerojet-Gen. Corp.*, 948 P.2d at 919. This duty "runs to claims that are actually covered, in light of the facts proved." *Id*. An insurer's contractual duty to indemnify is thus "limited to so much of the judgment or settlement as was fairly allocable to the claims that were covered by the policy." *Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 738 (7th Cir. 2002) (quotation marks omitted) (alteration omitted). This narrow duty to reimburse the insured for liability for covered damages is unaltered by a breach of the independent duty to defend. *See Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 970-71 (8th Cir. 1999) (concluding that a breach of the duty to defend does not expand the duty to indemnify); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Moore*, 349 So. 2d 1113, 1116 (Ala. 1977) (same). To award to the insured the entire settlement as consequential damages after a breach of the duty to defend, when some claims against the insured were for covered damages and others were for uncovered damages, would "improperly

enlarge[] the bargained-for coverage." *Elliott*, 1998 ME 138, ¶ 11, 711 A.2d 1310 (quotation marks omitted).

[¶24]  For these reasons, we have held that an insurer does not, by breaching the duty to defend, lose the right to assert noncoverage as a defense to a claim for indemnification brought by the insured.  *Id.*  However, we have also held that if an insurer wrongfully declines to defend a claim, it assumes the burden of proving noncoverage.[6]  *Id.*; *accord Liquor Liab. Joint Underwriting Ass'n v. Hermitage Ins. Co.*, 644 N.E.2d 964, 968 (Mass. 1995); *Sentinel Ins. Co. v. First Ins. Co.*, 875 P.2d 894, 914 (Haw. 1994) (recognizing a presumption of coverage following the insurer's breach of the duty to defend); *Isaacson v. Cal. Ins. Guar. Ass'n*, 750 P.2d 297, 308 (Cal. 1988) (same).

[¶25]  If the insurer can demonstrate that the liability of the insured is entirely uncovered by the insured's policy, the insurer is not liable for any obligations incurred by the insured in a settlement.  *McNicholes v. Subotnik*, 12 F.3d 105, 108 (8th Cir. 1993); *Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 647 (Alaska 1979).  However, "[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not." *Liberty Mut. Ins. Co. v. Metro. Life*

---

[6]  By contrast, when an insured brings an action for breach of an insurer's contractual obligation of indemnity, the burden of demonstrating coverage lies with the insured.  *Pelkey v. GE Capital Assurance Co.*, 2002 ME 142, ¶¶ 8, 10, 804 A.2d 385.

*Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001). "When the insured settles a claim after the insurer has breached its duty to defend, it is clear the insurer remains obligated to reimburse the insured for any settlement obligation covered by the liability policy." *Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med.*, 304 F.3d 804, 806-07 (8th Cir. 2002). Therefore, a "settlement encompassing both covered and noncovered claims must be fairly apportioned between the two." *Id.* at 807 (quotation marks omitted). The burden of establishing an appropriate apportionment of liability between covered and uncovered claims falls on the insurer. *See Liberty Mut. Ins. Co.*, 260 F.3d at 63. If the insurer cannot meet this burden of proof, it may be held liable for the entire settlement. *See Liquor Liab. Joint Underwriting Ass'n*, 644 N.E.2d at 969 & n.6.

[¶26] Here, further proceedings are necessary to determine whether and to what extent Amica is required to indemnify Harlor for the amount that she paid to settle the underlying action with the Primes.

The entry is:

> Summary judgment in favor of Amica vacated. Remanded for the entry of summary judgment in favor of Harlor, declaring that Amica breached its duty to defend, and for further proceedings regarding Amica's duty to

indemnify Harlor for any or all of the sum that she paid to settle the underlying action.

_____

ALEXANDER, J., concurring.

[¶27]  I concur in the result to vacate the trial court's decision, but, respectfully, I do not concur in the Court's reasoning, and I write to ensure that the Court's analysis is not over-read.  This action involves a standard contract dispute.  The Court's opinion, based entirely on the law regarding the duty to defend, should not be read to support any interpretation of law beyond what is necessary to decide this case.  In other words, it should not be read to allow every two-party contract dispute to include a tortious interference with an advantageous relationship claim with a potential for recovery of emotional distress damages.

## I.  CASE HISTORY

[¶28]  For purposes of this duty to defend action, there is no dispute about the essential facts.  Dawn Harlor and the Primes had an agreement allowing the Primes to use Harlor's dock, subject to a boat size limit.  The Primes made some improvements to Harlor's dock that, the Primes contended, was consideration for an agreement by Harlor to allow larger boats to use the dock.

[¶29]  The Primes' complaint alleged that when Harlor later sold the dock, she refused to honor the terms of the agreement regarding improvements to the dock and made false statements to obtain the Primes' agreement to a written "Confirmation of Easement" that may not have reflected the removal of the boat size restriction.  The Primes further alleged that following Harlor's sale of the dock, Harlor refused to confirm the Primes' right to use the dock for larger boats and made false statements regarding the Primes' right to use the dock.  Harlor's actions, the Primes alleged, resulted in uncertainty regarding their right to use the dock and prevented the Primes from selling their property with value added from the enhanced use easement that the Primes alleged was established by contract.

## II.  THE TORTIOUS INTERFERENCE CLAIM

[¶30]  We have outlined the elements of a claim for tortious interference with a contract or advantageous relationship, including the essential fraud or intimidation elements, in numerous opinions dating back nearly 120 years.  Our first opinion recognizing an action for tortious interference with a contract—there a contract for employment—was *Perkins v. Pendleton*, 90 Me. 166, 38 A. 96 (1897).  In *Perkins*, after an extensive review

of precedents from other jurisdictions, we approved a tortious interference action, using language similar to language we use today.

> [W]herever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference would have continued, he is liable in damages for such injuries as naturally result therefrom . . . .

*Id.* at 176, 38 A. at 99.

[¶31]  Later opinions addressing the elements of a claim for tortious interference with a contract or advantageous relationship include: *Currie v. Industrial Security, Inc.*, 2007 ME 12, ¶¶ 31-34, 915 A.2d 400; *Rutland v. Mullen*, 2002 ME 98, ¶¶ 13-15, 798 A.2d 1104; *James v. MacDonald*, 1998 ME 148, ¶¶ 6-7, 712 A.2d 1054; *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996); *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995); *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); *MacKerron v. Madura*, 445 A.2d 680, 683 (Me. 1982); *Taylor v. Pratt*, 135 Me. 282, 284, 195 A. 205, 206 (1937).

[¶32]  In each case from *Perkins* forward, the plaintiff had a contractual relationship with or anticipated a beneficial economic relationship with an identified third party.  The relationships with the identified third parties included: employment, personal or professional services, or a contract or

anticipated contract for purchase or sale of goods or services. The plaintiff's action was then brought against the defendant for alleged interference with the plaintiff's contractual or anticipated beneficial economic relationship with the identified third party.

[¶33] In *Currie*, we outlined the elements of a tortious interference claim as follows: "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104).

[¶34] Our precedents advise that a person engages in fraud when that person (here, allegedly, Harlor): (1) makes a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act or to refrain from acting in reliance on it; and (5) the third person (here, a prospective purchaser unknown to Harlor) justifiably relies on the representation as true and acts upon it, damaging the plaintiff (here, the Primes). *Petit*, 688 A.2d at 430. There is no allegation that Harlor directly

22

communicated with any prospective purchaser. Harlor, never having known or communicated with prospective purchasers, could not have committed the fraud element of the Primes' claim.

[¶35] Our precedents advise that a person engages in intimidation when that person (here, allegedly, Harlor): (1) communicates a statement or threat to a third person (here, a prospective purchaser unknown to Harlor); (2) that suggests adverse physical, economic, or emotional consequences to the third person; (3) for the purpose of inducing the third person to act or fail to act regarding the plaintiff (here, the Primes); and (4) the third person acts based on the statement or threat, damaging the plaintiff. *See Currie*, 2007 ME 12, ¶¶ 31-33, 915 A.2d 400. In *Pombriant*, we held that intimidation exists wherever a defendant has procured a breach of contract by "making it clear" to the third party with whom the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with the defendant would be to breach the third party's contract with plaintiff. 562 A.2d at 659.

[¶36] Harlor, never having known or communicated with prospective purchasers, could not have committed the intimidation element of the Primes' tortious interference claim. On the facts established by the pleadings, there

was no basis in law for the Primes to maintain a tortious interference claim against Harlor.

### III.  THE DUTY TO DEFEND OBLIGATION

[¶37]  To determine whether there is a potential for insurance coverage, we compare the underlying complaint with the coverage provided "in the insurance policy." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 9, 36 A.3d 876. An insurer has a duty to defend only "if there is any *potential* that facts ultimately proved could result in coverage," *Id.* ¶ 10 (emphasis in original), irrespective of whether the insurer is ultimately required to indemnify the insured, *York Ins. Group of Me. v. Lambert*, 1999 ME 173, ¶ 8, 740 A.2d 984.

[¶38] The Primes and Harlor were engaged in an ordinary contract dispute over whether the Primes' improvements to the dock entitled them to the benefit of a bargain that expanded their right to use the dock.  Emotional distress damages are generally not recoverable for breach of contract claims, because recovery is limited to those harms that were reasonably anticipated by the parties at the time the contract was formed and would be expected to flow naturally from breach of the contract.  *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 696 (Me. 1986).

[¶39]  Exceptions to this rule exist only when breach of the contract results in bodily harm, or when severe emotional distress is "a particularly likely result of a breach," such as "contracts for the carriage and proper disposition of dead bodies and . . . contracts for the delivery of messages concerning death." *McAfee v. Wright*, 651 A.2d 371, 372-73 & n.4 (Me. 1994). *See also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶ 15, 4 A.3d 492 ("[E]motional distress suffered as a result of breach of contract is ordinarily not recoverable unless it is accompanied by physical injury or it results in serious emotional disturbance due to the nature of the contract." (citing *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 651 (Me. 1993) and other precedents)).

[¶40]  Here, the Primes did not seek emotional distress damages.  Thus, Amica has no duty to indemnify for any amounts paid in the settlement. However, the Primes did include a tortious interference claim in their complaint.

[¶41]  I concur that a duty to defend exists based on the *potential* for recoverable damages.  Likewise, I concur that courts should not engage in fact-finding when determining whether an insurer has a duty to defend its insured.  An insurer has a duty to defend a baseless claim, if covered by the

terms of its homeowner's policy, because the alternative may leave the homeowner defenseless and subject to default for that baseless claim.

[¶42] But that duty to defend does not extend to other associated claims not covered by the homeowner's policy. Here, because the tortious interference claim was asserted, Amica had a limited duty to appear and defend the action as long as it included the tortious interference claim, but with a reservation of rights that did not obligate Amica to defend or indemnify the other, valid contract claims that apparently led Harlor to settle the action with the Primes.

[¶43] I agree with the trial court that there was no meaningful possibility—in fact no possibility at all—that the underlying suit could result in damages covered by the Amica policy. The best practice would have been to separate out consideration of the tortious interference claim and have the court proceed to determine Amica's responsibility to defend that claim, presumably by a quick and successful motion to dismiss.

[¶44] Any remand should limit the separate duty to indemnify to this narrow assessment of responsibility for attorney fees and costs of defense. It should not seek assessment of responsibility to defend the entire contract-based suit, and it should not change our law to remove the necessity

of identifying a third party whose relationship was interfered with in a tortious interference claim.

---

**On the briefs:**

> James D. Poliquin, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellant Dawn M. Harlor
>
> Martica S. Douglas, Esq., Douglas, Denham, Buccina & Ernst, Portland, for appellee Amica Mutual Insurance Company

**At oral argument:**

> Benjamin N. Donahue, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellant Dawn M. Harlor
>
> Martica S. Douglas, Esq., for appellee Amica Mutual Insurance Company